1998 ME 227

Geraldine DiCENTES

v.

Danny R.P. MICHAUD et al.

Supreme Judicial Court of Maine.

Argued May 5, 1998.
Decided Oct. 7, 1998.

Jeffrey Neil Young (orally), N. Kate Werner, McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, for plaintiff.

Kevin M. Cuddy (orally), Cuddy & Lanham, Bangor, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ., and ROBERTS, A.R.J.*

SAUFLEY, Justice.

[¶ 1] Geraldine DiCentes taught science at Schenck High School under a probationary contract during the 1990–91 school year. When her contract was not renewed for the following year, she filed suit against several members of the school system. DiCentes now appeals from the resulting judgment of the Superior Court (Penobscot County, *Kravchuk, J.*) finding, *inter alia*, that the Superintendent of Schools and the East Millinocket School Committee did not violate the Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831–840 (1988). Schenck High School's principal cross-appeals from the portion of the court's judgment finding him responsible for a violation of section 833(1)(B) of the Act. We modify the judgment and affirm.

I.  Background

[¶ 2] DiCentes was hired by the East Millinocket School Committee to work at Schenck High School during the 1989–90 school year, both as a teaching assistant for a single student and as a teacher for a geometry class. She then accepted a one-year probationary contract to work as a science teacher at the high school for the 1990–91 school year. During both of those school years, Ralph Ryder was the Superintendent of the School Department, and Danny R.P. Michaud was the principal of Schenck High School.

[¶ 3] There had been friction between DiCentes and Michaud during the 1989–90 school year, and more friction arose between the two during the first half of the 1990–91 school year. Among the sources of friction was DiCentes's concern about the adequacy of the ventilation in the chemistry lab and the adjacent chemical storage room. She voiced those concerns to both Ryder and Michaud, and, contrary to Michaud's instructions, to officials with the Departments of Education and Labor.

[¶ 4] In December 1990, Ryder separately concluded, due to budgetary concerns, that a reduction-in-force was necessary for the entire East Millinocket School Department. The School Department's principals, including Michaud, were asked to prepare reduction-in-force proposals for their respective schools. After considering the proposals, Ryder recommended to the School Committee that three positions be eliminated at the high school: one in industrial arts, one in music, and one in the science department. Pursuant to the School Department's "last-in, first-out" policy, Ryder determined that this proposal would result in the elimination of the science position held by DiCentes. The School Committee ultimately voted to approve the reduction-in-force, thereby eliminating the teaching position DiCentes had held.[1]

[¶ 5] DiCentes filed a complaint with the Maine Human Rights Commission,[2] and later exercised her right to sue in Superior Court, filing a twenty-eight count complaint related to her not having been hired as a teacher by the East Millinocket School Committee for the 1991–92 school year.[3] Although the trial

---

* Roberts, J., sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity of Active Retired Justice.

1. The School Committee voted on proposed contract renewals before it finally approved the reduction-in-force. Because of the anticipated reduction-in-force, the contracts of those teachers whose positions would be eliminated were not included in the renewal list.

2. Upon completion of administrative proceedings, the Commission dismissed DiCentes's complaint, finding no reasonable grounds to believe unlawful discrimination had occurred.

3. DiCentes's amended complaint named 5 individuals, the East Millinocket School Committee, the Town of East Millinocket, and a law firm as defendants. All defendants except Ryder and Michaud were dismissed from the action prior to trial. The East Millinocket School Committee was dismissed without prejudice by stipulation of the parties docketed July 30, 1993, but was apparently treated as an active defendant by all parties during the trial. Moreover, although the East Millinocket School Department appears to have been DiCentes's actual "employer," the East Millinocket School Committee was named in DiCentes's complaint as her "employer." The parties have referred to the Department and the Committee interchangeably. Because we find that DiCentes's claim under the Whistleblowers'

court concluded that DiCentes was not entitled to a jury trial on her Whistleblowers' Protection Act (WPA) claims, it empaneled a jury to hear DiCentes's legal claims and to sit in an advisory capacity on her WPA claims. After eight days of trial, the case was submitted to the jury with special interrogatories concerning the WPA claims. When the jury deadlocked on whether Michaud and Ryder were liable pursuant to the WPA, the court dismissed the jury and ruled on those claims, finding that Ryder and the East Millinocket School Committee had not violated the Act, and that Michaud had violated the Act. The court imposed a $1500 civil penalty upon Michaud personally pursuant to 5 M.R.S.A. § 4613(2)(B)(7) (Supp. 1997).[4] This appeal followed.

[¶ 6] On appeal, DiCentes argues that the court erred in concluding that she was not entitled to a jury trial on her WPA claims; erred in finding that Ryder was not liable for a violation of section 833(1)(B) of that Act, either as a result of his recommendation not to renew her contract or as a result of his refusal to provide her with a letter of recommendation for prospective employers; erred in concluding that the East Millinocket School Committee was not liable in respondeat superior for Michaud's violation of section 833(1)(B); and erred in finding that she was not entitled to damages representing her lost wages. Michaud cross-appeals, arguing that the court erred in finding that he was liable for a violation of section 833(1)(B).

## II. Right to Jury Trial

[¶ 7] The right to jury trial in civil matters is found in article 1, section 20 of the Maine Constitution, which provides in pertinent part that "[i]n all civil suits, ... the parties shall have a right to a trial by jury, except in cases where it has heretofore been

otherwise practiced." Pursuant to M.R. Civ. P. 38, this right "shall be preserved to the parties inviolate." We have construed article 1, section 20 to provide " 'a broad constitutional guarantee of a right to a jury in all civil cases' except where 'by the common law and Massachusetts statutory law that existed prior to the adoption of the Maine Constitution in 1820 such cases were decided without a jury.' " *Kennebec Fed. Sav. & Loan Ass'n v. Kueter*, 1997 ME 123, ¶ 3, 695 A.2d 1201, 1202 (quoting *City of Portland v. DePaolo*, 531 A.2d 669, 670 (Me.1987)). Because matters in equity were never triable of right to a jury, the right to a jury trial does not exist for claims sounding in equity. *See DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me. 1995).

[¶ 8] Whether a claim is legal or equitable depends upon the basic nature of the claim, including the remedy sought, as evidenced by the source of the claim or the nature of the pleadings. *See id.* We have previously addressed this issue with respect to claims under the Maine Human Rights Act, 5 M.R.S.A. §§ 4551–4651 (1989 & Supp. 1997) (MHRA), and have concluded that such claims are, by law, equitable in nature and thus do not give rise to a right to a jury trial. *See Rozanski v. A–P–A Transport, Inc.*, 512 A.2d 335, 342 n. 1 (Me.1986); *Maine Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253, 1261 (Me.1979).

[¶ 9] DiCentes, however, asks us to reexamine our holding in light of *Abbott v. Bragdon*, 882 F.Supp. 181 (D.Me.1995), in which the United States District Court for the District of Maine held that MHRA claims do give rise to a right to jury trial, at least to the extent that a litigant seeks relief in the form of a civil penalty. *See id.* at 182.[5] We

---

Protection Act fails, we do not decide whether the Department or the Committee is the proper defendant, and we will refer to the Committee as DiCentes's "employer."

**4.** The court entered judgment against Michaud on two counts. in favor of Michaud on twelve other counts, and in favor of Ryder and the East Millinocket School Committee on fourteen counts, including WPA violations, thus disposing of the twenty-eight counts asserted in DiCentes's

complaint. DiCentes challenges only the judgments related to her Whistleblower claims.

**5.** The Massachusetts Supreme Judicial Court has also concluded that a sex discrimination claim brought pursuant to its civil rights statute is "analogous to common law actions sounding in both tort and contract" at the adoption of the Massachusetts Constitution, thereby carrying the right to a jury trial. *Dalis v. Buyer Adver.*, 418 Mass. 220, 636 N.E.2d 212, 215 (1994).

are not convinced that our prior decisions should be set aside.[6]

[¶ 10] An employee who suffers an adverse employment action as a result of unlawful discrimination, who may otherwise be without a cause of action against her employer at common law or in contract, may receive meaningful redress through the provisions of the MHRA. *See generally Maine Human Rights Comm'n v. Local 1361, United Paperworkers Int'l Union,* 383 A.2d 369, 373–75 (Me.1978) (discussing Legislature's intention that the MHRA should have broad coverage in the area of fair employment practices). The MHRA, like its federal counterpart, was intended to accomplish "the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of ... impermissible classification[s]." *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Toward that end, the Legislature provided the court with broad powers in equity to fashion appropriate remedies. Although the Act authorizes both legal and equitable relief, see 5 M.R.S.A. § 4613(2)(B), it explicitly provides *the court* with broad equitable authority to hear claims, determine liability, and award relief. *See Maine Human Rights Comm'n,* 408 A.2d at 1261 n. 11. Accordingly, here,

where the cause of action itself sounds in equity, the nature of the relief sought is not dispositive on the question of availability of jury trial. The court committed no error in concluding that DiCentes was not entitled to a jury trial on her WPA claims.

### III. Respondeat Superior

[¶ 11] DiCentes argues that the East Millinocket School Committee is liable in respondeat superior for WPA violations committed by its agents, Ryder and Michaud. Under the doctrine of respondeat superior, liability for tortious acts of a servant may be imputed to the master,[7] see W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS §§ 69, 70, at 499, 501 (5th ed.1984), and the acts of an agent may be imputed to the principal. *See Bonk v. McPherson,* 605 A.2d 74, 78 (Me.1992). The concept of respondeat superior has caused much debate in the courts in the context of employment discrimination claims.[8]

[¶ 12] Here, however, the answer is found in the explicit language of the WPA and the uncontested facts before the court. Section 833(1) of the WPA provides that "[n]o *employer* may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, condi-

6. Maine is not the only state whose state and federal courts are split on the right to a jury trial for claims arising from state civil rights statutes. In Iowa, Missouri, and Pennsylvania, all states whose civil rights statutes provide for both legal and equitable relief, state courts have concluded that state civil rights claims are equitable in nature and do not give rise to a state constitutional jury trial right, while federal courts have concluded that such claims are legal in nature and do give rise to a federal constitutional jury trial right. *Compare Smith v. ADM Feed Corp.,* 456 N.W.2d 378, 382–84 (Iowa 1990) *with Bales v. Wal–Mart Stores, Inc.,* 972 F.Supp. 483, 490 (S.D.Iowa 1997); *State ex rel. Tolbert v. Sweeney,* 828 S.W.2d 929, 933–35 (Mo.Ct.App.1992) *questioned in Hammons v. Ehney,* 924 S.W.2d 843, 848–49 (Mo.1996) (en banc) *with Sherer v. Foodmaker, Inc.,* 921 F.Supp. 651, 653 (E.D.Mo. 1996); *Murphy v. Cartex Corp.,* 377 Pa.Super. 181, 546 A.2d 1217, 1222–24 (1988) *with Welcker v. Smithkline Beckman,* 746 F.Supp. 576, 581–83 (E.D.Pa.1990). A similar split existed in the courts of New Jersey, only to be resolved when the New Jersey Legislature amended the Law Against Discrimination to include an express statutory right to a jury trial. *See Shaner v.*

*Horizon Bancorp.,* 116 N.J. 433, 561 A.2d 1130, 1142 (1989); *McMillan v. Lincoln Fed. Sav. & Loan Ass'n,* 678 F.Supp. 89, 91–93 (D.N.J.1988); N.J. Stat. Ann. § 10:5–13 (1993), *amended by* P.L.1990, ch. 12, § 2. Finally, a prospective split appears to exist between the state and federal courts of Tennessee. *See Plasti–Line, Inc. v. Tennessee Human Rights Comm'n,* 746 S.W.2d 691, 693–94 (Tenn.1988) (declaring that Tennessee Human Rights Act is not rendered unconstitutional by failure to provide a right to a jury trial on claims arising thereunder); *Hannah v. Pitney Bowes, Inc.,* 739 F.Supp. 1131, 1132–33 (E.D.Tenn.1989) (THRA gives rise to a right to a jury trial in federal court).

7. "Respondeat superior" is defined by Black's Law Dictionary to mean "Let the master answer." BLACK'S LAW DICTIONARY 1179 (5TH ED.1979).

8. For a review of cases addressing respondeat superior in the context of sexual harassment claims, see *Faragher v. City of Boca Raton,* —— U.S. ——, 118 S.Ct. 2275, 2286–88, 141 L.Ed.2d 662 (1998).

tions, location or privileges of employment." 26 M.R.S.A. § 833(1) (1988) (emphasis added). The WPA defines the term "employer" in the following manner:

"Employer" means a person who has one or more employees. Employer includes an *agent* of an employer and the State, or a political subdivision of the State.

26 M.R.S.A. § 832(2) (1988) (emphasis added). Pursuant to the plain language of these two sections, the discriminatory conduct of an "employer" encompasses not only the conduct of the employing entity, but also that of its agents.

■ [¶ 13] The question therefore is not whether the School Committee, as DiCentes's employer, can be held responsible for the actions of its agents, but rather, whether Ryder and Michaud were acting as its agents with regard to the nonrenewal of her contract. We conclude that both Ryder, as superintendent, and Michaud, as high school principal, were agents of the Committee when they undertook the actions complained of here.[9] They each made recommendations as required by school policy; they forwarded those recommendations to the next place in the chain of decision making; they did so in the context of the ordinary responsibilities of their positions with the School Committee. Accordingly, as agents of DiCentes's employer, if either Ryder or Michaud violated the WPA, those violations, pursuant to the plain language of sections 833(1) and 832(2), constitute actions for which the School Committee will be responsible under the Act.

## IV. Ryder's Actions

■ [¶ 14] To prevail on a claim of unlawful retaliation pursuant to the WPA, an employee must show (1) that she engaged in activity protected by the WPA, (2) that she experienced an adverse employment action, and (3) that a causal connection existed between the protected activity and the adverse employment action. *See Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 154 (Me.1991). The trial court appropriately analyzed DiCentes's WPA claims through the use of the shifting burdens analysis articulated in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[10] We review the trial court's factual findings for clear error, *see* M.R. Civ. P. 52(a), and will set aside such a finding only where there is no competent evidence in the record to support it. *See Calaska Partners, Ltd. v. Corson*, 672 A.2d 1099, 1104 (Me.1996).

■ [¶ 15] The trial court found that DiCentes met her burden of proving that she engaged in an activity protected by the WPA when she contacted officials in state government to report what she reasonably believed to be a health and safety violation created by ventilation problems in the high school's chemistry lab. See 26 M.R.S.A. § 833(1)(B). It was undisputed that DiCentes's contract was not renewed, and that her contacts with the State agencies were made before the decision was made not to renew her contract. Therefore, DiCentes met her burden of proof on the first two prongs of the analysis.

■ [¶ 16] The question, then, is whether there was a causal connection between those contacts and DiCentes's nonrenewal. The employee at all times retains the final burden of persuasion on the issue of causation. *See Maine Human Rights Comm'n*, 408 A.2d at 1262 (applying similar approach to sex discrimination under the MHRA). Proof of conduct protected by the

---

9. Generally, an agency relationship "is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." RESTATEMENT (SECOND) OF AGENCY § 1(1) (1958). *See Page v. Boone's Transport Ltd.*, 1998 ME 105, ¶ 5, 710 A.2d 256, 257.

10. We explicitly adopted the *McDonnell Douglas* approach to employment discrimination claims brought under the MHRA in *Maine Human Rights Comm'n*, 408 A.2d at 1261–63, and implicitly adopted the approach for Whistleblower proceedings in *Bard v. Bath Iron Works*, 590 A.2d 152, 154 (Me.1991) (citing *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir.1987)); *see also Wytrwal v. Saco School Bd.*, 70 F.3d 165, 171–73 (1st Cir.1995) (applying *McDonnell Douglas* approach to claim under the Maine Whistleblowers' Protection Act): *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir. 1996) (same).

WPA, however, followed in close proximity by an adverse employment action, gives rise to an inference that a causal connection is established; the employer, then, will be required to produce some probative evidence to demonstrate a nondiscriminatory reason for the adverse employment action. *See Wytrwal v. Saco School Bd.*, 70 F.3d 165, 171–73 (1st Cir.1995); *Maine Human Rights Comm'n*, 408 A.2d at 1262. Once that evidence has been offered, the burden remains with the employee to persuade the factfinder that there was, in fact, a causal connection between the protected activity and the adverse employment action.

[¶ 17] The trial court found that DiCentes did not satisfy her ultimate burden in this case; DiCentes simply failed to persuade the factfinder that there was a causal connection between her protected activities and the nonrenewal of her contract. *See Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535–36 (1st Cir.1996). Although DiCentes recognizes that her employer presented a legitimate reason for nonrenewal, she argues that the court should have been persuaded that those reasons were pretextual. The court, however, accepted Ryder's testimony that his reasons for recommending nonrenewal of DiCentes's contract were not related to her contacts with the State agencies regarding the ventilation problem. DiCentes failed to persuade the court that her nonrenewal was caused either by Michaud's unfavorable recommendation or by any retaliatory scheme to eliminate her position through the reduction-in-force. Indeed, the court explicitly found that Ryder's decision not to nominate DiCentes for contract renewal, and the School Committee's subsequent action, were based on the budget considerations of the reduction-in-force, and not on Michaud's recommendation. Each of these findings is supported by competent evidence in the record. Judging the credibility of witnesses is within the exclusive province of the factfinder. *McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 52 (Me.1996). In the absence of a causal connection between Michaud's response to her protected activities and Ryder's recommendation of nonrenewal, DiCentes's whistleblower claim against Ryder fails.[11]

[¶ 18] DiCentes also claims that the court erred when it did not find Ryder's refusal to give DiCentes a letter of recommendation to constitute a violation of the Whistleblowers' Protection Act. The refusal to recommend her for future employment did not affect the compensation, terms, conditions, location, or privileges of her then existing employment. *See* 26 M.R.S.A. § 833(1). It therefore did not fall within the protection of the Act.

## V. Michaud's Actions

[¶ 19] We turn next to Michaud's assertion that the court erred in finding him liable under the WPA. Although Michaud's recommendation of nonrenewal was found to have been made in part based on DiCentes's contacts with the State, the trial court found that the School Committee's ultimate decision not to renew DiCentes's contract was unrelated to Michaud's unfavorable recommendation. DiCentes again failed to persuade the court that there was a causal connection between Michaud's recommendation and the nonrenewal of her contract. *See Bard*, 590 A.2d at 154 (requiring plaintiff to show, as part of a prima facie case, "a causal link between the protected activity and the adverse employment action"). Indeed, the court found that "Michaud's [recommendation] in regard to Ms. DiCentes had nothing to do with her renewal or nonrenewal."[12]

---

11. DiCentes does not argue here that Michaud's unfavorable recommendation caused any change in the conditions of her employment during the conclusion of her probationary contract. Her argument is that Michaud's unfavorable recommendation was itself an adverse employment action.

12. Michaud also argues that DiCentes's communications with the State agencies were only a minor consideration in his nonrenewal recommendation. Referring to evidence of her unprofessional behavior in discussing her teacher evaluations with students, discussing another teacher's failings with parents, as well as differences in teaching philosophy, he argues that those communications were not a' significant motivating factor. Because we conclude that Michaud's recommendation of nonrenewal, standing alone, does not constitute a violation of the Act, we do not reach his alternative argu-

[¶ 20] Moreover, DiCentes failed to persuade the court that Michaud recommended the elimination of a science position in order to eliminate DiCentes's position specifically. Nor did the court find that Michaud's recommendation to eliminate the science position was in retaliation against DiCentes or that Ryder's conclusions regarding which positions should be eliminated were based on a retaliatory recommendation from Michaud. Notwithstanding DiCentes's argument that the court was compelled to find that the School Committee "rubber stamped" Michaud's unfavorable recommendation, the court had evidence before it from which it could have determined that Ryder made his recommendation independently of Michaud's recommendation and based it instead on the school's needs in light of the reduction-in-force.

[¶ 21] The Maine WPA protects employees from actions that adversely affect the employee's compensation, terms or other conditions of employment. *See* 26 M.R.S.A. § 833(1). Michaud's recommendation, although found to have been made in part based on a retaliatory motive, was also found not to have affected any of the conditions of DiCentes's employment. Because DiCentes failed to persuade the factfinder that the nonrenewal of her contract was caused by Michaud's unfavorable recommendation rather than the reduction-in-force, the recommendation standing alone cannot be the basis for liability under the WPA. Accordingly, the court erred in concluding that Michaud's actions, unrelated to DiCentes's nonrenewal, could provide the basis for liability under the Act.

## VI. East Millinocket School Committee

[¶ 22] DiCentes failed to persuade the court that either the School Committee or its agents caused her nonrenewal to occur because of DiCentes's contacts with State agencies regarding the ventilation safety issue. Because DiCentes did not suffer a violation of her rights pursuant to the WPA, we do not reach her argument concerning damages.

ment that he could not be held responsible unless it had been found that he would not have made the recommendation *but for* Dicentes's

The entry is:

Judgment modified to reflect entry of judgment in favor of all defendants and as so modified, affirmed.

call to the State. *See Wells v. Franklin Broadcasting Corp.*, 403 A.2d 771, 773 (Me.1979).