STATE OF MAINE

YORK, ss.

DONALD L. GARBRECHT
LAW LIBRARY

FEB 10 2000

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-99-049

PAF-YOR - 2/5/2000

JEANNINE MILLETTE,

   Plaintiff

   v.

OCEAN COMMUNITIES
FEDERAL CREDIT UNION, et al.,

   Defendant

ORDER
AND
DECISION

Jeannine Millette was hired by the defendant, Ocean Communities Federal Credit Union, in 1987 and worked for the defendant in accounting and bookkeeping jobs without incident and with excellent evaluations for nearly a decade. In 1995 she was given the award of employee of the year, an award which was not normally given but was given at the suggestion of her supervisor Donald Fecteau. Her June 1996 and June 1997 evaluations were primarily in the "commendable" range. In July of 1996 a new training policy was instituted which eventually led to this lawsuit.

The policy stated that all employees must receive fifty hours of training by June 30, 1997 in order to be eligible for the annual salary increase. The defendant required the training regardless of whether it could be completed during normal paid working hours. The plaintiff was informed in mid-June of 1997 that she would not receive an annual increase because she had not completed the required training. At that time she was an "accountant specialist" which was designated as a grade 7 position and, since she had not yet reached the maximum, she would have received a pay increase.

Around June 23, 1997 she told the Chief Executive Officer J. Chapin that a federal regulation was violated by the policy of requiring uncompensated training. Mr. Chapin seemed to her to be resentful that she had raised the subject and, in her judgment, brushed her off. When her initial discussion with Mr. Chapin proved unfruitful, she filed a formal grievance with her supervisor Donald Fecteau on July 1, 1997. He acknowledged receipt of the grievance but stated that it related to a credit union policy and that it was not directed to him. She then filed a further grievance with Mr. Chapin. A referral of her complaint to the defendant's attorney was made.

The next decision by the credit union that the plaintiff was aware of was the first in a series of potentially illegal actions. On July 21, 1997 the plaintiff received a memorandum which began with the harmless statement that the credit union was waiting for a response from the attorney and will get back to her once the lawyer's opinion is received. Then the problems began when the memorandum continued with, "On a separate issue, during my review of your file as a result of the grievance, I discovered that you are incorrectly placed as a Grade 7 on the salary scale. Credit union policy is specific . . . regarding all employees placement within pay grade. Your current grade is a grade 6. A copy of the CUSAP Grade recommendations is attached for your information. This grade establishes your maximum hourly rate of $13.36. As you know, the credit union compensates employees more than the maximum rate established for a pay grade." Unknown to her until then the position of accounting specialist had been downgraded to grade 6, see plaintiff's exhibit 11, listing the July 1, 1997 salary ranges. The memorandum of July 21, 1997 was quickly

2

corrected to eliminate what was a typographical error by stating that the credit union does not compensate employees more than the maximum for the pay grade.

Soon thereafter on July 25, 1997 the training requirements were vacated thus, except for the job reclassification, permitting the plaintiff to get a normal pay increase. She does, however, get the raise.

In October of 1997 the accounting department was reorganized eliminating the plaintiff's job. She applied for and got a bookkeeper job with a 9% decrease in pay. Despite her decade of service she was placed in a probationary status. In January of 1998 she received an unfavorable mid-probationary review and had an increasingly strained relationship with Mr. Chapin. A second grievance was filed on January 27, 1998 regarding the pay decrease. After a hearing which she was not allowed to attend, her grievance was denied.

The plaintiff filed suit under the Whistleblowers' Protection Act, see 26 M.R.S.A. §§831-et seq. Under the Act ". . . No employer may discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because: A. The employee, acting in good faith, . . . reports orally or in writing to the employer . . . what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of . . . the United States." 26 M.R.S.A. §833(1)(A). All of the procedural requirements under Titles 5 and 26 for bringing such a claim have been met.

The substantive requirements for such claims are set forth in *DiCentes v.*

3

*Michaud*, 1998 Me. 227, ¶14, 719 A.2d 509, 14. That opinion states, "To prevail on a claim of unlawful retaliation pursuant to the WPA, an employee must show (1) that she engaged in activity protected by the WPA, (2) that she experienced an adverse employment action, and (3) that a causal connection existed between the protected activity and the adverse action." In this case the first two requirements are readily met which creates an inference that a causal connection exists. The employer is required to produce some probative non-pretextual evidence that there was a nondiscriminatory reason for the adverse employment action. The final burden of persuasion on the issue of causation, however, remains at all times with the employee.

The credit union has said that the reorganization had been planned for some time given its acquisition of a separate credit union in Sanford and the suggestions of its auditors, that the reorganization was not designed to punish the plaintiff, that the plaintiff had remained in a too high job classification for some time because of the negligence of Mr. Fecteau in not taking earlier corrective action, that the probation status was a normal requirement and that the negative comments in the mid-probation review were fully deserved. I find that some of these claims ring true but others do not and that the plaintiff has met her burden of persuasion on the issue of causation.

I do find that the reorganization was done for legitimate business reasons not related to Ms. Millette and that the state-wide CUSAP job grades were honestly applied. However, I did have the opportunity to see and hear all the witnesses and in this case that opportunity was more useful than it sometimes is.

4

I found Ms. Millette to be a hard-working, capable, reliable employee. She and Mr. Fecteau worked well together and held each other in mutual respect. Mr. Chapin appeared to be a capable hard-working executive but did not appear to take criticism well, particularly from a lower level employee. His action in cutting her salary was done as punishment for the plaintiff having the audacity to complain about the training program. The probationary status, the contents of the probationary review and a strained working relationship were Ms. Millette's punishment for challenging Mr. Chapin and being right.

While Mr. Fecteau may have not have been aggressive enough and demanding enough as a manager, and while he clearly does not like Mr. Chapin, the facts remain that Mr. Fecteau did not cut Ms. Millette's salary, that Mr. Chapin did not either notice or act on that failure, and that the pay cut was done to punish the plaintiff for making her complaint about the training program. In addition the plaintiff was judged too harshly in her mid-probation review because of her earlier complaint.

The final issues involve the remedies for these violations.

The plaintiff is awarded her lost wages of $7,157.93 as of December 31, 1999, her lost benefits of $357.90 and the lost wages and benefits from December 31, 1999 to the date of the judgment. She is awarded $7,500.00 for compensation for emotional suffering and $2,500.00 in punitive damages which are awarded on an actual malice proved by clear and convincing evidence standard. Civil penal damages of $5,000.00 are also awarded and the plaintiff shall be awarded her reasonable attorney's fees. Within 14 days of the date of this order and decision the plaintiff shall submit a

5

proposed judgment and her request for attorney's fees with a supporting affidavit and documents. The defendant may reply within 7 days thereafter.

Dated:        February 8, 2000

Paul A. Fritzsche
Justice, Superior Court

PLAINTIFF:   Kim Matthews, Esq.
             PO Box 8
             Portland Me    04112-0008

DEFENDANTS:  Peter Schroeter, Esq.
             SMITH ELLIOTT SMITH AND GARMEY
             PO Box 1179
             Saco  Me   04072