STATE OF MAINE                          SUPERIOR COURT
HANCOCK, SS.                            CIVIL ACTION
                                        Docket No. CV-02-23

Ronald Stanley,
        Plaintiff


        v.                              Order (Defendant's Motion
                                        for Summary Judgment)

DONALD L. [illegible]
LAW LIBRARY

AUG 1 1 2003

Hancock County Commissioners,
        Defendants


        Pending before the court is the defendant's motion for summary judgment on the

complaint, in which the plaintiff alleges that he was wrongfully terminated from

employment because, in doing so, the defendants violated his rights under the

Whistleblower's Protection Act (WPA), 26 M.R.S.A. § 831 *et seq.*, and under the Maine

Human Rights Act (MHRA), 5 M.R.S.A. § 4551 *et seq.* The MHRA claim is not

independent but rather is the conduit for the WPA claim. *See* 5 M.R.S.A. § 4572(1)(A).

On their motion, the defendants argue that the record on summary judgment does not

generate genuine issues of material fact in support of the WPA and MHRA claims. The

defendants also contend that the plaintiff is not entitled to recover damages for emotional

distress arising from his termination, because the defendants are immunized from liability

for such damages under the Worker's Compensation Act. The court has reviewed the

parties' written argument and the other materials they have filed in conjunction with the

motion at bar.[1]

---

[1] As part of their reply to the plaintiff's opposition to the summary judgment motion, the
defendants filed an "additional statement of material facts in support of motion for
summary judgment." The rules do not provide for such a submission, *see* M.R.Civ.P
56(h), perhaps because the motion opponent (here, the plaintiff) has no opportunity to
respond to it. Thus, the court disregards the plaintiff's "additional statement of material
facts."

1

Summary judgment is proper only if the record on summary judgment shows that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See* M.R.Civ.P. 56. To survive a motion for a summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law; "[t]he plaintiff must establish a *prima facie* case for each element of the cause of action." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶8, 694 A.2d 924, 926. "'A fact is material when it has the potential to affect the outcome of the suit.'" *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169, 172. If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, a summary judgment may be granted." *See Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996) (citation and internal punctuation omitted).

The parties argue their positions under the burden-shifting framework adopted from federal law in *DiCentes v. Michaud*, 1998 ME 227, 719 A.2d 509. Under that formula, a WPA claimant establishes a prima facie case by demonstrating that (1) he engaged in an activity that is protected under the WPA, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. The defendant then bears the burden of producing evidence that the adverse employment action was based on a legitimate, non-discriminatory reason. Finally, the plaintiff bears the burden of persuasion to show that the reason offered by the defendant was pretextual. *Id.*, ¶ 14, 719 A.2d at 514.[2] For purposes of this case, an activity protected by the WPA occurs when the claimant-employee, "acting in good faith. . .reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or [state] rule. . . ." 26 M.R.S.A. § 833(1)(A). The record may also trigger the provisions of

---

The court also notes that it would be difficult to characterize the defendants' 20 page, 191 paragraph statement of material facts as "short, and concise. . . ." *See* M.R.Civ.P. 56(h). Although there are many facts that are material to the motion at bar, the amount of duplication within the defendant's statement of material fact has made it much longer than necessary.

[2] Although DiCentes did not get past the burdens associated with the prima facie case, the Law Court has made clear that the remainder of the burden-shifting approach rooted in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) applies to claims brought under Maine's WPA. *DiCentes*, 1998 ME 227, ¶ 14, n.10, 719 A.2d at 514.

sections 833(1)(B) and (C), which are based the employee's good faith reports of conditions or practices that place at risk his or another's health or safety, or the employee's good faith refusal to carry out a directive that would expose him or another to a condition that would result in serious bodily injury or death, after a correction of the condition has been sought.[3] The WPA protections are triggered only if the employee first brings the alleged violation to an employment supervisor, and the employer has a reasonable opportunity to correct the violation. *Id.*, § 833(b).

The core of the plaintiff's claim is that the defendants subjected him to an adverse employment action (namely, termination) at least in part because he had complained to his supervisor, Perley Urquhart, that neither he (the plaintiff) nor several third parties were authorized or competent to perform certain electrical work at a county facility and because he declined to perform certain tasks that he claims were assigned to him. The defendant argues here that the plaintiff's WPA claim fails as a matter of law because the evidence is insufficient to support an argument that he engaged in an activity protected under that law and that there is insufficient evidence that the adverse employment action was caused by any such conduct.

When the record is viewed in the light most favorable to the plaintiff, it reveals the following factual contentions.

Until his termination on March 13, 2001, the plaintiff was the maintenance supervisor for Hancock County building facilities. Defendant's Statement of Material Fact (DSMF) ¶ 56. His supervisor was Perley Urquhart, who was the county's facilities director. DSMF ¶ 55. In that capacity, Urquhart had the responsibility to recommend the termination of any employee who he felt was not performing adequately. DSMF ¶ 59.[4]

_____

[3] In light of the reasons for the court's order on the motion at bar, there is no need to examine whether the present record generates a factual argument that all three of these forms of protected activities are implicated in this case.

[4] The plaintiff disputed this – and a number of other statements of material fact submitted by the defendant – on the ground that although the proposed statement correctly reflects the contents of the record, "the Judge is free to completely disregard this self-serving statement, as it is not from a disinterested witness." The plaintiff has invoked this basis, without more, for denying such assertions as, "Bickford stamped that memo on February 23rd and forwarded copies to the Commissioners," *see* POSMF ¶ 6, and "Stanley did not deny many of the things set forth in Urquhart's memos," *see* POSMF ¶ 99.

3

In May and August 2000, Urquhart wrote two memoranda that were critical of the plaintiff's performance of his work duties. DSMF ¶¶ 68-71. In those reports, Urquhart found fault with the plaintiff's level of productivity, his use of time and his hostile attitude toward Urquhart himself. *See* exhibits A and B attached to DSMF. In October 2000, the plaintiff filed a grievance and requested that the May and August reports be

---

The proffered basis for this approach is the following passage:

> In doing so [analyzing the record on summary judgment], however, the court must draw all favorable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. . . .'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.". . .Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe . . . .That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51, 147 L.Ed.2d 105, 122 (2000) (citations omitted).

Maine's rules on summary judgment require that if a supporting statement is material fact is denied, then that denial must be supported by a record citation. M.R.Civ.P. 56(h)(2). Maine caselaw ratifies this requirement. *See, e.g., Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653, 655-56. Thus, here, where the plaintiff's denials of the defendant's statements of material fact are not supported by a record reference, then the defendant's assertions must be treated as admitted. The court recognizes the concept that a factfinder is rarely obligated to accept a witness' testimony as truthful, regardless of whether that witness is interested or disinterested. However, if this approach were integrated into the summary judgment motion practice, then the motion's opponent could defeat the motion simply by noting that a factfinder might choose to reject the testimony of the witness who is the source of the moving party's statement of material fact. In Maine, summary judgment motion practice is more rigorous.

Further, an opponent to a summary judgment motion retains recourse on this issue, because in support of a specific denial, the opponent has full opportunity to draw the court's attention to those specific parts of the record that demonstrate, directly or inferentially, that the movant's statement of material fact is subject to genuine dispute. For example, despite a defendant-employer's articulation of a lawful explanation for an adverse employment action, a plaintiff-employee may deny that assertion and support the denial with specific facts, such as temporal proximity between the employee's protected conduct and the employment action. *See DiCentes v. Michaud*, 1998 ME 227, ¶ 16, 719 A.2d 509, 514-15. Thus, when the credibility of a witness is in issue, an opposing party has both the opportunity and obligation to challenge that witness's statements on the basis of specific record references.

4

expunged from his personnel file. DSMF ¶¶ 74-75. After meeting with Urquhart and the plaintiff, the defendants found that the information in Urquhart's reports was "appropriate" and "factual," and the defendants denied the plaintiff's grievance. DSMF ¶¶ 4, 78-79.

In January 2001, Urquhart wrote a report to the defendants, recommending that they discharge the plaintiff from employment. DSMF ¶ 86. In that report, Urquhart wrote that the plaintiff was "unable and/or unwilling to make a successful change to his new position within the Maintenance Department. . . ." *See* exhibit E to DSMF. Among other criticisms, Urquhart reported that "[t]here are many tasks that he will not perform." *Id.* Urquhart mentioned several specific examples that involved carpentry and painting -- although not electrical work, but also noted, "There are many other situations in which he continues on this course of failure to comply with directions or to complete work orders." *Id.* Urquhart delivered that written recommendation to the county commissioners on February 23, 2001. DSMF ¶ 5.

The defendants considered Urquhart's letter at its March 13, 2001, meeting. DSMF ¶ 9. Both Urquhart and the plaintiff were present at and participated in the meeting. *See, e.g.,* DSMF ¶ 40. Urquhart first covered the issues that he had raised in his January report. DSMF ¶¶ 37-38. In his memorandum and in his comments at the March 13 meeting, Urquhart did not specifically refer to any incidents, either specifically or generally, when the plaintiff refused to perform electrical work. DSMF ¶ 39. However, one of the broad complaints expressed by Urquhart was the plaintiff's unwillingness to do some tasks that were assigned to him. Plaintiff's Opposing Statement of Material Fact (POSMF) ¶ 39. After Urquhart made his presentation to the defendants, the plaintiff told the defendants that Urquhart had asked him to do electrical work that he was not licensed to perform. DSMF ¶ 11; POSMF ¶¶ 10-11. The plaintiff showed the defendants several work orders for which the plaintiff was responsible. POSMF ¶ 43-44. Urquhart then told the defendants that in February 2001 (after he had written the memorandum recommending the plaintiff's termination), he had asked the plaintiff to rewire some lights, believing that the plaintiff was authorized to do that work under Urquhart's own electrician's license. DSMF ¶¶ 47-48. This was not true, and the plaintiff was not given

5

an opportunity to challenge this comment. POSMF ¶ 10.[5] The defendants then voted unanimously to terminate the plaintiff's employment. DSMF ¶¶ 13, 52.

One of the central issues in this case, as the parties have framed the issues, is whether the defendants' decision to terminate the plaintiff's employment was motivated in part by the plaintiff's alleged whistleblower conduct (or, putting it conversely, whether the plaintiff's protected conduct was a cause of the termination decision). On this issue, the defendants have included the following assertion in their statement of material fact: "Based on the comments of both Stanley and Urquhart, the memo from Urquhart written more than a month before the flood light work, and the work forms that didn't even mention Stanley, the Commissioners thought that Stanley's statements regarding electrical work was [sic] irrelevant and had nothing to do with the recommendation that Stanley's employment be terminated." DSMF ¶ 49. The record reference supporting this assertion is to an affidavit filed by one of the commissioners who voted on Urquhart's recommendation. In his opposing rule 56 statement, the plaintiff denied this assertion, stating, "Plaintiff admits that this is what is contained in Mr. Brown's affidavit, but notes that, to the extent this statement reflects the affiant's state of mind or opinion, the Judge is free to completely disregard this self-serving statement, as it is not from a disinterested witness." POSMF ¶ 49. If in fact the defendant's assertion has not been properly controverted, then it is deemed admitted. In that event, the record on summary judgment would foreclose a genuine factual contention that the plaintiff's refusal to perform certain electrical work was a cause of the defendant's decision to terminate his employment.

The resulting question is whether the plaintiff's denial is adequate to place the defendants' assertion in issue. From an historical perspective, the reasons for a decision are factual in nature; they are no longer present opinions, but rather they are states of mind that either did or did not exist in the past. Thus, the assertion that the Commissioners had a particular "thought" is an assertion of historical fact: the Commissioners either held that belief, or they did not. Here, the basis for the plaintiff's denial of this assertion is merely that a factfinder might choose not to accept that

---

[5] In their statement of material fact, the defendants assert that Urquhart told them that in fact his license did not authorize the plaintiff to rewire the lights and that his earlier contrary belief was incorrect. DSMF ¶ 48. For purposes of this motion, however, the court construes the record favorably to the plaintiff.

evidence as truthful; the plaintiff has not provided a record reference or affirmative factual basis to support this denial. For the reasons discussed above, *see* note 3, the court concludes that this is not a sufficient basis to controvert a statement of material fact.

The court notes that several other assertions of material fact in the defendants' submission address the reasons for the defendants' decision. For example, in paragraph 13 of the defendant's statement of material fact and the plaintiff's opposing statement of material fact, the defendant claims that they found the issue of electrical work to be irrelevant. The plaintiff disputes this assertion, but his record reference fails to substantiate that challenge: in the portion of his affidavit cited in his response, he states only that he told the defendants that he was not permitted to perform the electrical work, that Urquhart told the defendants that he could do so, and that the defendants voted to terminate him. In light of the direct statement in paragraph 49 – deemed admitted by the plaintiff – that the electrical job issue was not relevant to the employment decision, the plaintiff's response fails to create any factual issue regarding the reasons for that action. Further, paragraph 53 of the defendants' rule 56 statement also yields to the assertion regarding the reasons for the defendants' decision as stated directly in paragraph 49, because the plaintiff addresses only the nature of his presentation to the commissioners at the March meeting.

Consequently, the record on summary judgment establishes that any prior reports made by the plaintiff regarding the lawfulness of policies and practices in the maintenance of county buildings were not a cause of the defendants' decision to terminate his employment. The defendants are therefore entitled to summary judgment.

The entry shall be:

For the foregoing reasons, the defendants' motion for summary judgment is granted. Summary judgment is entered for the defendants. The defendants are awarded their costs of court.

Dated: August 1, 2003

FILED &
ENTERED

AUG 0 6 2003

SUPERIOR COURT
HANCOCK COUNTY

Justice, Maine Superior Court