STATE OF MAINE                                           SUPERIOR COURT
CUMBERLAND, ss.                                          CIVIL ACTION
                                                         DOCKET NO: CV-07-139

MARY EDGERTON,

                    Plaintiff,
                                                ORDER
v.

MAINE CENTER ON DEAFNESS,                    DONALD L. GARBRECHT
                                             LAW LIBRARY

                    Defendant.
                                                FEB 19 2008


This case comes before the Court on Defendant Maine Center on Deafness

(MCD's) Motion for Summary Judgment pursuant to M.R. Civ. P. 56.

## BACKGROUND

The issues in this case arise from the July 19, 2005 employment

termination of Plaintiff Mary Edgerton (Ms. Edgerton) by the then Executive

Director of MCD, Mr. Jonathan Connick (Mr. Connick). MCD is a nonprofit

organization that serves people in Maine who are D/deaf, late-deafened or hard-

of-hearing. Ms. Edgerton asserts that she was fired in violation of Maine's

Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831-840 (WPA).[1]

---

[1] The WPA states in pertinent part:

**§833. Discrimination against certain employees prohibited**

> **1. Discrimination prohibited.** No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:
>
> A. The employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States;
>
> B. . . .
>
> C. . . .

1

Ms. Edgerton was employed as MCD's Director of Civil Rights from September 1997 through July 19, 2005. Mr. Connick was MCD's Executive Director during that time and Ms. Edgerton's supervisor.

Not long after her tenure at MCD began, Ms. Edgerton began to have concerns about Mr. Connick's work performance. Specific concerns that may be pertinent to a WPA claim are 1) that Mr. Connick wrote and circulated a memorandum to staff that limited staff access to the board of directors in violation of 13-B M.R.S.A. § 701;[2] and 2) that Mr. Connick unlawfully allocated MCD funds.

Ms. Edgerton reported her concerns variously to Mr. Connick directly, to Mr. Larry Taub (Mr. Taub), President of the MCD Board of Directors and Superintendent for the Governor Baxter School for the Deaf, and to Ms. Jan DeVinney (Ms. DeVinney), Director of the Division of Deafness at the Maine

---

D. . . .

E. . . .

**2. Initial report to employer required; exception.** Subsection 1 does not apply to an employee who has reported or caused to be reported a violation, or unsafe condition or practice to a public body, unless the employee has first brought the alleged violation, condition or practice to the attention of a person having supervisory authority with the employer and has allowed the employer a reasonable opportunity to correct that violation, condition or practice.

Prior notice to an employer is not required if the employee has specific reason to believe that reports to the employer will not result in promptly correcting the violation, condition or practice.

[2] The memo, which Ms. Edgerton asserts is in violation of 13-B M.R.S.A § 701, stated:

Any internal issues with MCD administration must be discussed with Executive Director as set forth in the Personnel Policy Procedures, and no outside discussion with any Board Members will be tolerated.

Def. SMF ¶ 16.

2

Department of Labor/Bureau of Rehabilitation Services. Ms. DeVinney allotted State contracts to MCD.

Ms. Edgerton's reports are characterized by MCD as openly critical, insubordinate behavior that rightfully led to her dismissal in July 2005. Ms. Edgerton characterizes the reports as her protected right, under the WPA, to apprise the Board of Directors and the State agency of possible illegal activities by Mr. Connick.

The discord reached its apex in July 2005 when, MCD asserts, Ms. Edgerton's "open and obvious disrespect" for Mr. Connick made it impossible for him to work with her and led him to consult an attorney and an outside consultant regarding Ms. Edgerton's possible termination. Def. SMF ¶34. MCD asserts that the decision to fire Ms. Edgerton was made on July 14, 2005. On July 18, 2005, Ms. Edgerton met with Mr. Taub and laid out her continued concerns regarding Mr. Connick's work performance. She was terminated on July 19, 2005.

## DISCUSSION

### I.    Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750

3

A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22.

When a defendant seeks summary judgment, a "plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## II.  Whistleblowers' Protection Act

MCD moves for summary judgment asserting that Ms. Edgerton's actions are not protected activities under the WPA, or alternatively that no causal link exists between her firing and any alleged protected activity. In order to "prevail on a WPA claim, an employee must show that 1) [s]he engaged in activity protected by the WPA; (2) [s]he experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." *Currie v. Industrial Security, Inc.*, 2007 ME 12, ¶ 12, 915 A.2d 400, 404 (citations omitted). To survive summary judgment Ms. Edgerton must establish a prima facie case for each of the three elements. *Champagne*, 1998 ME 87, ¶ 9, 711 A.2d at 845.

### a.  Protected Activity

Ms. Edgerton asserts that her reports to Ms. DeVinney and the MCD Board of Directors were protected because they alleged that Mr. Connick had engaged in illegal activities. Under the WPA an employer is prohibited from "terminating an employee for reporting illegal activities." *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 154 (Me. 1991). Accordingly, to bring a claim under the WPA, an employee must meet the threshold burden of showing "that [s]he had

4

'reasonable cause to believe' that [her employer] had violated [a] 'law or rule adopted under the laws of this State, a political subdivision of this State or the United States.'" *Id.* (*quoting* 26 M.R.S.A. § 833(1)(A)).

The issue thus becomes not whether or not Mr. Connick's actions were in fact illegal, but whether Ms. Edgerton could reasonably have believed that her reports contained allegations of illegal activities. The pertinent allegations follow:

### i. Allegation Number 1: The Memorandum

On July 19, 2002, Mr. Connick circulated a memorandum to all staff in which he instructed them:

> Any internal issues with MCD administration must be discussed with Executive Director as set forth in the Personnel Policy Procedures, and no outside discussion with any Board Members will be tolerated. SMF ¶16.

Ms. Edgerton asserts that this policy is illegal under the Maine Nonprofit Corporation Act.[3] She further asserts that she initially took this concern directly to Mr. Connick, conveyed to him that she thought that the policy was illegal, but that he did not rescind the memorandum. SMF ¶¶ 16-18.

Ms. Edgerton's statements are supported by her deposition testimony in which she supports her belief that the memorandum policy was illegal based on her prior experience at a nonprofit corporation. Edgerton Depo. 31: 11-25, 32: 1-

---

[3] Section 701 of the Maine Nonprofit Corporation Act states in pertinent part:

> Boards of directors shall ensure that no employee of the corporation may be terminated for contacting a director or directors. Directors may not preclude contact between employees of the corporation and members of the board of directors.

13-B M.R.S. § 701 (2006).

11. Considering the facts in the light most favorable to Ms. Edgerton, she has raised a prima facie case of a protected activity.

### ii. Misallocation of funds

Ms. Edgerton also asserts that Mr. Connick was unlawfully allotting charitable funds to non-charitable purposes. These allegations include Mr. Connick's alleged regular absence from the office while still drawing salary, mis-statements to the Board of Directors regarding allocation of funds, and his alleged use of MCD funds to purchase electronic devices for personal use. MCD denies that Ms. Edgerton's complaints included allegations of illegality.

Considering the facts in a light most favorable to Ms. Edgerton, there is no evidence in the record that allegations to the board around these concerns amounted to claims of illegality but only claims of incompetence and mismanagement by Mr. Connick. Moreover, the record does not reflect that Ms. DeVinney's conversations with the board (though based largely upon Ms. Edgerton's allegations) contained allegations of illegal activities, but of mismanagement that could potentially lead to loss of contracts. This is not enough under the WPA. *See Bard*, 590 A.2d at 154.

### iii. July 18, 2005 Meeting of Ms. Edgerton and Mr. Taub

The subject matter of this meeting is in dispute. Ms. Edgerton asserts that she made allegations of unlawful conduct against Mr. Connick at the meeting.[4] MCD counters that the complaints were general performance complaints against Mr. Connick and other general agency issues that had no impact on Ms. Edgerton's employment termination. SMF ¶¶ 45-46. Based on Ms. Edgerton's deposition testimony, any possible reports of illegalities were merely reiterations

---

[4] These allegations were reiterations of complaints made by Edgerton to Connick, the Board of Directors and DeVinney throughout her tenure at MCD. Edgerton Aff. ¶ 29; Edgerton Depo. 63: 12-22.

of passed allegations. The Court deems the content of this meeting an unprotected activity under the WPA.

### b. Adverse Employment Action

There is no dispute in this case that Ms. Edgerton's termination amounted to an adverse employment action.

### c. Causal Connection

MCD asserts that, even if the Court determines that Ms. Edgerton engaged in a protected activity, no causal connection exists between Ms. Edgerton's termination and the alleged protected activity. Ms. Edgerton "retains the final burden of persuasion on the issue of causation." *DiCentes v. Michaud,* 1998 ME 227, ¶ 16, 719 A.2d 509, 514 (citations omitted).

To determine causal connection, the Court engages in a shifting burdens analysis. *Id.* ¶ 14, 719 A.2d at 514 (*citing McDonnell Douglas v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)). The employee has the initial burden to raise an inference of a causal connection. *Id.* ¶ 16, 719 A.2d at 515. An inference of a causal connection is established when a protected activity is closely followed by an adverse employment action. *Id.* Should an employee raise such an inference, the burden then shifts to the employer to establish a "nondiscriminatory reason for the adverse employment action." *Id.* The burden then reverts to the employee to "persuade the factfinder that there was, in fact, a causal connection between the protected activity and the adverse employment action." *Id.*

### i. Inference of Causal Connection

Ms. Edgerton asserts that her repeated and continued complaints made to Mr. Connick, the Board of Directors and Ms. DeVinney amount to a string of

7

protected activities that led to the July 19, 2005 adverse employment action. This Court, however, has found that the only protected activity that Ms. Edgerton engaged in was her report to Mr. Connick of the perceived illegality of the July 19, 2002 memo. A time lapse of more than a year has been deemed too long to support a causal link alone. *Bishop v. Bell Atlantic Corp.*, 299 F.3d 53, 58 (1st Cir. 2002) (citations omitted). In this case the time lapse was three years. Ms. Edgerton offers no other evidence to raise a causal connection between the protected activity and the adverse employment action. Consequently, Ms. Edgerton has not carried her burden of raising a causal connection between her protected activity and the adverse employment action. Accordingly, summery judgment in favor of MCD is appropriate.

## Therefore, the entry is:

Defendant's Motion for Summary Judgment is GRANTED

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this _5th_ day of _February_, 2008.

Roland A. Cole
Justice, Superior Court

8

OF COURTS
rland County
. Box 287
laine 04112-0287

JAMES SHEPARD KEGL ESQ
52 WHITNEY FARMS ROAD
NORTH YARMOUTH ME 04097

*Plaintiff*

F COURTS
and County
3ox 287
ne 04112-0287

MELISSA HEWEY ESQ
PO BOX 9781
PORTLAND ME 04104-5081

*Defendant*