Bruce W. JAGOE

v.

John P. BLOCKSOM, et al.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1982.

Decided Feb. 2, 1982.

Becker & Olmsted, P.A., Peter J. Becker (orally), Bridgton, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Ernest J. Babcock (orally), Gregory W. Powell, Portland, for John P. Blocksom.

Preti, Flaherty & Beliveau, Robert Checkoway (orally), Christopher D. Nyhan, Portland, for Osteopathic Hospital.

Gross, Minsky, Mogul & Singal, P.A., George C. Schelling (orally), Jules Mogul, Bangor, for Robinson L. Bidwell.

Before GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A. R. J.

ROBERTS, Justice.

Bruce W. Jagoe has sued two doctors and a hospital alleging negligent diagnosis and treatment by the defendants.[1] The Superior Court, Cumberland County, dismissed his complaint for failure to comply with the notice requirement of the Maine Health Security Act, 24 M.R.S.A. §§ 2501–2905 (Supp.1981–82). On Jagoe's appeal, we reverse and remand the case to the Superior Court for further proceedings.

Title 24 M.R.S.A. § 2903 (Supp.1981–82) provides as follows:

> No action for death or injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced until at least 90 days after written notice of claim setting forth under oath the nature and circumstances of the injuries and damages alleged is served personally or by registered or certified mail upon the person or persons accused of wrongdoing. Any applicable statute of limitations shall be tolled for a period of 90 days from service of notice.

Jagoe's complaint alleged that he served upon each defendant a notice of claim in the following form:

---

**1.** The defendants on appeal are John P. Blocksom, Robinson L. Bidwell, and Osteopathic Hospital of Maine, Inc. Frances M. Dyro was named as a defendant in the complaint, but was not served with a summons or complaint. The claim against Dyro has been dismissed by the plaintiff.

### NOTICE OF CLAIM

To: [Named defendant]

Pursuant to *Maine Revised Statutes Annotated*, Title 24, Sec. 2903, you are hereby notified of the claim against you of Bruce W. Jagoe.

Now Comes Bruce W. Jagoe, being duly sworn, and states as follows:

1. That on or about April 24, 1978, your affiant was admitted to the Osteopathic Hospital of Maine for diagnosis and treatment of a back injury.

2. That your affiant was under the treatment of John P. Blocksom, D.O., from the date of his admission.

3. That your affiant's decision to consult Doctor Blocksom was based upon Doctor Blocksom's representation of himself as a qualified Orthopedic Surgeon.

4. That Doctor Blocksom's course of treatment included two separate decompressive laminectomies and lumbar fusion.

5. That Doctor Blocksom, during his course of treatment of your affiant, consulted with Doctor Robinson L. Bidwell, M.D. and Frances M. Dyro, M.D. both of whom represented themselves to be competent in their field of practice.

6. That Doctors Blocksom, Bidwell and Dyro negligently diagnosed and treated your affiant.

7. That all or part of this treatment took place at the Osteopathic Hospital of Maine, which was also negligent.

8. That as a result of the said treatment, your affiant experiences great pain and anxiety and is unable to obtain gainful employment.

Dated: April 18, 1980    s/Bruce W. Jagoe

                             Bruce W. Jagoe

State of Maine
Cumberland, ss
Sworn and subscribed to this 18th day of April 1980 before me,

                   [Signature]

                   Notary Public

**2.** Although the two-year period of limitation has not been raised by the pleadings, an argument was presented on appeal that the claim was time-barred because the action was commenced more than 90 days after service of

The action was commenced by filing the complaint in the Superior Court on July 21, 1980.[2]

Each defendant proceeded differently following the commencement of Jagoe's action. Dr. Bidwell filed an answer raising no affirmative defenses and admitting receipt of a notice of claim. He then filed a motion to dismiss on the grounds that the notice was not properly under oath and did not state the nature and circumstances of the alleged injuries and damages. The motion was granted on December 1, 1980, on the ground that the notice was not "under oath."

Dr. Blocksom did not file an answer. He moved in the alternative to dismiss (arguing that the defective notice created a jurisdictional defect), for summary judgment, and for a more definite statement. Summary judgment was denied, but the motion to dismiss was granted on December 1, 1980, also because the notice was not "under oath."

Osteopathic Hospital filed no answer. Instead it moved for a more definite statement and for summary judgment. Summary judgment was denied on December 1, 1980. Jagoe then attempted to appeal from the dismissal of the complaint as to Blocksom and Bidwell, but we remanded the case because no final judgment had been entered against the Hospital. The Hospital then filed a motion to dismiss based on the defective notice. The motion was granted by an order dated April 2, 1981, both because the notice was not "under oath" and because it did not set forth the nature and circumstances of the injuries and damages alleged.

■ Failure to comply with the 90-day notice requirement of 24 M.R.S.A. § 2903 is an affirmative defense, *Dougherty v. Oliviero*, Me., 427 A.2d 487, 489 (1981), which should properly be raised in the pleadings. *See Reed v. Tracy*, Me., 435 A.2d 745, 746 (1981); M.R.Civ.P. 8(c). Here, the defend-

notice. That argument misconceives the thrust of the tolling provision in 24 M.R.S.A. § 2903. By tolling the running of the period of limitation, the statute leaves the remainder of the period to run *after* the expiration of 90 days.

ants' motions to dismiss were granted prior to the dissemination of our opinion in *Dougherty* at a time when it was not settled whether compliance with section 2903 was jurisdictional, part of the plaintiff's cause of action, or an affirmative defense. *See Dougherty*, 427 A.2d at 489. In recognition of the then-prevailing uncertainty and because copies of the notices were attached to the complaint, we will *here* treat the issue of compliance with section 2903 as properly raised by the defendants' motions.

■ In *Paradis v. Webber Hospital*, Me., 409 A.2d 672 (1979) we stated that the oath provision in section 2903 "simply means that the declarant must verify in writing and in the form of an oath taken before an authorized official, the truth of the allegations." *Id.* at 675. The defendants argue that the notice must therefore recite that the plaintiff swore to the truth of the statements therein. Here, each notice of claim contains a jurat which states: "Sworn and subscribed to this 18th day of April 1980 before me, [signature of a notary public]." That language satisfies the "under oath" requirement of section 2903. In a similar case where a notice of claim "properly verified" was required to be served, the Utah Supreme Court interpreted a jurat reading "Subscribed and sworn to before" the notary as follows:

> Such phrase or language, "Subscribed and sworn to before me," fairly and reasonably means not only that the claimant subscribed the claim in the presence of the notary, but also that the notary administered an oath to the claimant, and that he under oath in substance and effect stated that the statements contained in the instrument or document subscribed by him were true. No other effect or meaning may fairly or reasonably be given such language. If by such phrase, the claimant did not in substance and effect declare, under oath, that the statements contained in the document or instrument signed by him were true, it is difficult to conceive for what other purpose or effect the oath was or could have been administered to him.

*White v. Heber City*, 82 Utah 547, 554, 26 P.2d 333, 335 (1933); *accord, Loeb v. Smith*, 78 Ga. 504, 3 S.E. 458 (1887) (jurat read "Sworn to and subscribed before me"; "[t]o swear to a petition is to affirm on oath that the matters of fact alleged therein are true."); *see Henslee v. Kennedy*, 262 Ark. 198, 555 S.W.2d 937 (1977).

We distinguish *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.*, Me., 351 A.2d 845 (1976), where we held that an affidavit in support of an attachment was defective because the affiant failed to state that he believed information he had received from a third party was true. There the applicable rule, M.R.Civ.P. 4A(h), *specifically* required the affiant to "state that he believes this information to be true." *See Henslee v. Kennedy*, 262 Ark. at 205, 555 S.W.2d at 940 (notary's jurat stating that the affiant was sworn is sufficient to show statement made under oath where no judicial precedent or statute requires affiant to state in his denial of proposed admissions that he denies admissions on oath). Moreover, an affidavit under Rule 4A(h) is intended to serve as evidence which the trial court can consider in deciding whether to approve a motion for attachment. *See Northeast Investment Co.*, 351 A.2d at 854. It is reasonable to require more of an affiant who relates information received from third parties and whose affidavit is intended to be used as evidence in court, than of an affiant who states information within his personal knowledge in a notice merely intended to trigger a 90-day period "during which the parties can attempt to settle the claim through non-judicial procedures...." *See Dougherty*, 427 A.2d at 490.

We also distinguish *Pineland Lumber Co. v. Robinson*, Me., 382 A.2d 33 (1978). There a notice of lien claim was held defective because affixed to it was a *certificate of acknowledgement*, not a jurat. In the instant case, the plaintiff may be found by inference at least to have sworn under oath that the statements in the claim were true, whereas in *Pineland Lumber* the language of the acknowledgement as to what was

being sworn was very specific: the claimant acknowledged that the lien claim instrument was his free act and deed, and the free act and deed of his corporation. That is everything the acknowledgement recites; there is no room to infer anything further. *See First Security Mortgage Co. v. Hansen*, 631 P.2d 919, 921 (Utah 1981).

■ We now turn to the defendants' contention that the notices of claim fail to adequately state "the nature and circumstances of the injuries and damages alleged...." 24 M.R.S.A. § 2903. The defendants argue that *detailed* allegations as to the nature and circumstances of the injuries and damages are necessary in order to further the purposes of weeding out doubtful claims and encouraging the settlement of meritorious ones underlying section 2903. We disagree. Section 2903 is part of the Maine Health Security Act, 24 M.R.S.A. §§ 2501–2905, enacted to implement the recommendation of the Pomeroy Commission study. *See Paradis v. Webber Hospital*, Me., 409 A.2d 672, 674 (1979). With respect to the notice of claim, the Commission stated:

> The Commission believes that any reasonable measure that helps weed out doubtful claims and encourages the settlement of meritorious ones is beneficial to the parties and public. In malpractice claims this may be the result if there is a mandatory *waiting period* prior to suit in which *negotiations may take place.*

(Emphasis added.) The Commission envisioned that the waiting period itself, during which negotiations would take place, would help weed out doubtful claims and encourage settlement of meritorious ones. The details which the defendants desire should be disclosed during the negotiations. Moreover, many of the facts concerning the nature and circumstances of the injuries will already be within the possession of the defendants. We reject the defendants' attempt to convert a notice of claim into a pre-action discovery device.

The entry is:

Judgments of dismissal reversed.

Remanded to Superior Court for further proceedings.

All concurring.