1998 ME 87

Karen CHAMPAGNE

v.

MID–MAINE MEDICAL CENTER, et al.

Supreme Judicial Court of Maine.

Argued Oct. 7, 1997.

Decided April 30, 1998.

Louis J. Shiro (orally), Shiro & Shiro, Waterville, for plaintiffs.

Penny Littell (orally), Daniel Rappaport, Preti, Flaherty, Beliveau & Pachios, L.L.C., Portland, for Mid–Maine Med. Ctr.

Wendell Large, Anne Cressey, Richardson, Whitman, Large & Badger, P.C., Portland, for Priscilla Hutchins.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Karen Champagne appeals from a judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) granting Defendant Mid–Maine Medical Center's and Defendant Priscilla Hutchins' motions for a summary judgment on Champagne's notices of claim filed pursuant to 24 M.R.S.A. § 2903 (1990 & Pamph.1997).[1] Champagne contends that her notices of claim stated causes of action for negligent infliction of emotional distress ("NIED"), intentional infliction of emotional distress ("IIED"), battery, and invasion of privacy, and that there are genuine issues of material fact concerning these claims. Alternatively, she argues that the court exceeded the bounds of its discretion by granting the Defendants' motions for a summary judgment prematurely, without allowing her a continuance to conduct additional discovery to oppose the motions. We affirm the judgment.

---

1. 24 M.R.S.A. § 2903, which is part of the Maine Health Security Act, provides in pertinent part:

   **1. Commencement of action.** No action for professional negligence may be commenced until the plaintiff has:

    A. Served and filed written notice of claim in accordance with section 2853;

    B. Complied with the provisions of subchapter IV–A; and

    C. Determined that the time periods provided in section 2859 have expired.

Subchapter IV–A, which encompasses sections 2851–59 of title 24, establishes mandatory prelitigation screening and mediation panels for all claims of professional negligence against healthcare providers and practitioners.

## I.

[¶ 2] The following facts are undisputed. On November 24, 1992, at 1:23 a.m. Karen Quinlan Champagne gave birth to a son, Makita, at Mid–Maine Medical Center. At about 9:00 a.m., Priscilla Hutchins, a nursing student who was participating in a clinical rotation program at MMMC, took Makita out of the nursery and gave him to another maternity patient. The patient breast-fed Makita for three to five minutes before it was discovered that the baby was not hers. Makita was returned to the nursery and to date has suffered no ill effects from the experience. Champagne was not present when her baby was breast-fed by the patient and was unaware of the situation until about 10:00 a.m., when a nurse told her what had happened.

[¶ 3] Pursuant to 24 M.R.S.A. § 2903 and §§ 2851–59, Champagne filed notices of claim against MMMC and Hutchins on behalf of herself and Makita. With the approval of the Prelitigation Screening Panel, both Defendants filed motions for a summary judgment with the Superior Court.[2] Champagne opposed the Defendants' motions, contending that her notices of claim stated causes of action for invasion of privacy, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress[3]; and that genuine issues of material fact existed concerning these claims. Alternatively, Champagne moved that the court grant her a continuance to permit her to conduct additional discovery.

[¶ 4] In September 1996 the court granted MMMC's and Hutchins' motions for a summary judgment "as to all [of Champagne's individual] claims stated in the notice of claim," but left intact Makita's claims. After Champagne's motion to report the decision to this Court pursuant to M.R. Civ. P. 72(c) was denied, the parties filed a stipulation of dismissal with prejudice of Makita's claims. This appeal followed.

## II.

### Negligent Infliction of Emotional Distress: Direct Victim

[¶ 5] Champagne first contends that her notices of claim stated a cause of action for negligent infliction of emotional distress, and that the existence of genuine issues of material fact concerning her NIED claim precluded the entry of summary judgments. In reviewing a summary judgment, we examine the evidence in the light most favorable to the nonprevailing party to determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law. *See Petillo v. City of Portland,* 657 A.2d 325, 326 (Me. 1995). In testing the propriety of a summary judgment, we accept as true the uncontroverted facts properly appearing in the record. *See Gerber v. Peters,* 584 A.2d 605, 607 (Me.1990) (citing FIELD, MCKUSICK & WROTH, MAINE CIVIL PRACTICE § 56.4 at 357 (2d ed. Supp.1981)).

[¶ 6] We have recognized that the victim of negligent conduct has a legally protected interest in her psychic health, with different rules governing recovery depending on whether she is characterized as a "direct" or an "indirect" victim. *See Cameron v. Pepin,* 610 A.2d 279, 280–81 (Me.1992). A plaintiff is a direct victim if she was the object of the defendant's negligent conduct. *See, e.g., Gammon v. Osteopathic Hosp. of Me., Inc.,* 534 A.2d 1282 (Me.1987) (plaintiff who discovered severed human leg in bag that he thought contained his recently deceased father's belongings was direct victim of hospital's and funeral home's alleged negligent conduct). In contrast, a plaintiff is an indi-

---

**2.** Although the plaintiff in a medical malpractice action must present her claim to a prelitigation screening panel before pursuing the claim in court, the parties may litigate certain preliminary legal affirmative defenses or issues in Superior Court prior to submission of the case to the panel. *See* 24 M.R.S.A. § 2853(5); *Welch v. McCarthy,* 677 A.2d 1066, 1068 (Me.1996).

**3.** On appeal Champagne argues that she has stated a cause of action for "professional negligence" in addition to her negligent infliction of emotional distress claim. NIED, however, is simply a *type* of professional negligence claim. In the absence of any allegation of physical injury resulting from the Defendants' conduct, Champagne's cause of action for professional negligence is necessarily limited to NIED.

rect victim if the claimed negligence underlying the NIED claim was directed not at her, but instead at someone she loved and to whom she was close. *See Nelson v. Flanagan,* 677 A.2d 545, 547 n. 3 (Me.1996); *see, e.g., Culbert v. Sampson's Supermarkets, Inc.,* 444 A.2d 433, 438 (Me.1982) (mother who observed her child choking on a foreign object in baby food manufactured by defendant was indirect victim of defendant's negligent conduct).

[¶ 7] Relying on *Gammon,* 534 A.2d 1282, Champagne argues that she was a direct victim of the Defendants' negligence in allowing Makita to nurse from the wrong mother. This claim is unpersuasive. The Defendants' negligence in allowing Makita to be nursed by the wrong mother was directed towards Makita, not his mother. The fact that Champagne had recently given birth to Makita cannot transform her status to that of a direct victim, and her reliance on *Gammon* as a basis for recovery is misplaced. *See, e.g., Gendek v. Poblete,* 139 N.J. 291, 654 A.2d 970, 974–75 (1995) (mother cannot be characterized as a direct victim of provider's negligent treatment of newborn shortly after birth).

[¶ 8] Although the gravamen of Champagne's notices of claim concerns the Defendants' act of allowing Makita to nurse from the wrong mother, her notice of claim against Hutchins[4] contains an allegation that Hutchins failed to inform Champagne of the potential risks posed by the breast-feeding incident. Thus, although Champagne cannot be characterized as a direct victim of the Defendants' negligence in taking Makita to the wrong mother, Champagne does cast herself as a direct victim of the discrete "failure to inform" conduct. Assuming without deciding that Hutchins owed a duty to inform Champagne of the risks posed by her son's exposure to another patient's breast milk, we nevertheless conclude that Champagne failed to produce sufficient evidence of causation on her failure-to-inform NIED claim to withstand summary judgment.

[¶ 9] Where a plaintiff will have the burden of proof on an essential issue at trial, and it is clear that the defendant would be entitled to a judgment as a matter of law at trial if the plaintiff presented nothing more than was before the court at the hearing on the motion for a summary judgment, the court may properly grant a defendant's motion for a summary judgment. *See Town of Lisbon v. Thayer Corp.* 675 A.2d 514, 517 (Me.1996); *Gerber,* 584 A.2d at 607; *see also* M.R. Civ. P. 50(a). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a *prima facie* case for each element of her cause of action. *See Fleming v. Gardner,* 658 A.2d 1074, 1076 (Me.1995). A judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation. *See id.; Barnes v. Zappia,* 658 A.2d 1086, 1089 (Me.1995).

[¶ 10] All actions sounding in negligence, including NIED, require a plaintiff to establish by a preponderance of the evidence that a defendant's negligent conduct was a proximate cause of her injuries. *See* PROSSER & KEETON, TORTS §§ 30, 38 (5th ed. 1984). Thus, to warrant submission of her case to a factfinder and to avoid judgment as a matter of law in the defendant's favor, a plaintiff seeking to recover for a defendant's negligence must first establish a *prima facie* case for each element of the cause of action, including causation. "The mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." RESTATEMENT (SECOND) OF TORTS § 433B cmt. a, at 442 (1965); *see also Unobskey v. Continental Ins. Co.,* 147 Me. 249, 257–58, 86 A.2d 160, 164 (1952) ("Conjecture, choice of possibilities, or quantitative probability is not proof. There must be something more to lead a reasoning mind to one conclusion rather than to the other.") (quotations omitted).

4. Champagne's notices of claim allege that Hutchins was negligent in failing to inform her of the risks and consequences of the breast-feeding incident, but do not make the same allegation against MMMC. We express no opinion as to whether MMMC could be held vicariously liable under the doctrine of respondeat superior for Hutchins' alleged negligence.

[¶ 11] In addition to alleging throughout her notices of claim that MMMC and Hutchins were negligent in allowing Makita to be breast-fed by the wrong mother, Champagne alleges in paragraph six that Hutchins was negligent "in informing and educating [Champagne] about the risks and consequences of the incident." By deposition and affidavit, Champagne alleged, *inter alia*, that she suffered periodic crying spells; that she did not eat or sleep regularly for several months; and that she felt humiliated, angry, dirty, extremely violated, confused, very upset, and very worried after the incident.[5] The evidence before the court at the time of the summary judgment motions, however, did not provide any basis for a factfinder to determine whether these feelings were attributable to Hutchins' act of allowing Makita to breast-feed from the wrong mother, for which Champagne has no cause of action for direct NIED, or whether these feelings were attributable to Hutchins' failure to inform her of the risks posed by the breast-feeding incident, for which we assume without deciding that there is a possibility of a direct NIED claim.[6]

[¶ 12] If a plaintiff makes an undifferentiated claim of injuries based on two discrete acts, and one of the acts cannot provide a basis for recovery as a matter of law, a factfinder cannot speculate about the causal link between the surviving act and the injuries alleged. *Cf. Unobskey*, 147 Me. at 257–58, 86 A.2d at 164. In the absence of evidence attributing Champagne's injuries to actionable conduct rather than nonactionable conduct, a trier of fact would be required to resort to mere guesswork to return a verdict in her favor. In these circumstances, we conclude that Champagne failed to produce sufficient evidence to create a genuine issue of material fact on the causal relationship between Hutchins' alleged failure to inform her of the risks created by the breast-feeding incident and the emotional distress she claims.

## Negligent Infliction of Emotional Distress: Indirect Victim

[¶ 13] Champagne next contends that she was an indirect victim of the Defendants' alleged negligence, and that her notices of claim therefore stated viable causes of action for NIED. In order for a bystander to recover for emotional distress proximately caused by a defendant's negligence toward another person, the bystander must demonstrate that she was present at the scene of the accident; that she suffered serious mental distress as a result of contemporaneously perceiving the accident; and that she was closely related to the victim. *See Nelson*, 677 A.2d at 548; *Cameron*, 610 A.2d at 283–84 (rejecting a pure foreseeability test and explaining that circumscribed duty of care in the context of claims made by bystanders for psychic injury reflects policy considerations).

[¶ 14] It is undisputed that Champagne did not witness Makita being nursed by the wrong mother and that she did not learn about the incident until about one hour

---

5. We also assume without deciding that Champagne's allegations of distress are "serious" as a matter of law. *See Gayer v. Bath Iron Works Corp.*, 687 A.2d 617, 622 (Me.1996) (to prevail on a claim of NIED, plaintiff must prove by a preponderance of the evidence that she suffered serious emotional distress that was a reasonably foreseeable result of the defendant's negligence; serious emotional distress exists "where a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event").

6. We note that Champagne's notice of claim alleged that she suffered severe emotional distress "as a result of the aforementioned act." This reference to a single "aforementioned act," combined with the incidental nature of the failure-to-inform claim (reflected by its complete omission from the notice of claim against MMMC), suggest

that it was only Hutchins' conduct *with respect to the breast-feeding incident itself* that caused Champagne's severe emotional distress. Moreover, the record before the court at the time of the summary judgment hearing evinces no logical or temporal link between Champagne's symptoms of emotional distress and Hutchins' alleged failure to inform her of the potential risks. For example, when asked during the deposition how she felt when she was told that Makita had been breast-fed by the wrong mother, Champagne stated that she felt "angry," "very upset," "extremely violated," "shock," "disbelief," and "confusion." Champagne offered no evidence to link these emotions to Hutchins' failure to inform her of the consequences of the breast-feeding incident, rather than to Champagne's learning of the incident itself.

afterward. In these circumstances, Champagne has not established a cause of action for NIED as a bystander to the Defendants' alleged negligence. *Compare, e.g., Cameron,* 610 A.2d at 284–85 (holding that parents who were not at scene of son's car accident but who later witnessed his pain and suffering at the hospital cannot recover damages for NIED from negligent tortfeasor) *with Culbert,* 444 A.2d at 438 (vacating dismissal of NIED claim where mother observed her child choking on a foreign object in baby food manufactured by defendant).

### Intentional Infliction of Emotional Distress

[¶ 15] Champagne contends that the court erred in granting a summary judgment to the Defendants on her claim for intentional infliction of emotional distress. To withstand summary judgment on an IIED claim, a plaintiff must present facts tending to show that the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from its conduct; that "the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; that the actions of the defendant caused the plaintiff's emotional distress; and that the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it." *Loe v. Town of Thomaston,* 600 A.2d 1090, 1093 (Me.1991) (quoting *Finn v. Lipman,* 526 A.2d 1380, 1382 (Me.1987)); *see Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979).

[¶ 16] In the context of an IIED claim, "it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery, or whether it is necessarily so." *Colford v. Chubb Life Ins. Co. of Am.,* 687 A.2d 609, 616 (Me.1996) (quoting *Rubin v. Matthews Int'l Corp.,* 503 A.2d 694, 699 (Me.1986)). Thus, while the jury must determine whether the elements of the tort were in fact satisfied, the court must first determine whether, as a matter of law, the facts alleged are sufficient to satisfy the elements. *See id.; see also Gray v. State,* 624 A.2d 479, 484 (Me.1993). It is undisputed that Hutchins brought Makita to a maternity patient who was not his mother; that Makita was permitted to nurse from the maternity patient for three to five minutes; that Makita was returned promptly and unharmed to the nursery when the error was discovered; and that Champagne was notified of the incident about one hour after it occurred. Such conduct, while troubling and unfortunate, cannot be characterized as "so extreme and outrageous as to exceed all possible bounds of decency in a civilized community." *Loe,* 600 A.2d at 1093. The court did not err in determining as a matter of law that Champagne had failed to state a cause of action for intentional infliction of emotional distress.

### Privacy and Battery Claims

[¶ 17] Champagne next contends that her notices of claim stated causes of action for invasion of privacy and for battery, and that the existence of genuine issues of material fact with respect to these claims precluded the entry of a summary judgment. Pursuant to 24 M.R.S.A. §§ 2903 and 2853, a notice of claim must set forth in writing and under oath "the professional negligence alleged and the nature and circumstances of the injuries and damages alleged...." We have construed this phrase to require only ordinary notice-pleading. *See, e.g., Dutil v. Burns,* 687 A.2d 639, 642 (Me.1997); *Jagoe v. Blocksom,* 440 A.2d 1022, 1025 (Me.1982). Notice-pleading simply requires that a defendant be provided with fair notice of the claim against him, and is "sufficiently performed by a rather generalized statement." *Richards v. Soucy,* 610 A.2d 268, 270 (Me.1992) (quoting 1 FIELD, MCKUSICK & WROTH, MAINE CIVIL PRACTICE § 8.2 at 192–93 (2d ed. 1970)).

[¶ 18] Although Champagne's notices of claim satisfied ordinary notice-pleading requirements for her emotional distress claims,[7] they failed to notify the Defendants

---

7. The notice of claim filed against MMMC alleged, *inter alia,* that MMMC was "negligent in

failing to follow proper and sufficient procedures in the supervision and training of Priscilla

adequately that Champagne intended to bring claims for invasion of privacy and battery. Neither notice of claim averred the essential elements for invasion of privacy or for battery, nor did they supply adequate factual information to disclose the basis of an invasion of privacy or battery claim. *See Loe*, 600 A.2d at 1093 (claim for intrusion upon physical or mental solitude requires "a physical intrusion upon premises occupied privately by a plaintiff for purposes of seclusion") (citing *Nelson v. Times*, 373 A.2d 1221, 1223 (Me.1977)); ZILLMAN, SIMMONS, & GREGORY, MAINE TORT LAW § 1.01 (1997) (central element of the tort of battery is a physical touching). Hence, the notices of claim did not state claims for invasion of privacy or battery.

### III.

[¶ 19] Finally, Champagne argues that the court exceeded the bounds of its discretion in denying her request for a continuance to permit her to conduct additional discovery in opposition to the Defendants' motions for a summary judgment. A party seeking a continuance has the burden of showing sufficient grounds for granting the motion, and the ruling of the presiding justice is reviewable only for abuse of discretion. *See Farrell v. Theriault*, 464 A.2d 188, 191 (Me.1983). There is nothing in the record to suggest that the court "was given any substantial reason whereby justice would be advanced by the grant of the continuance," *id.* at 192, and the court did not exceed the bounds of its discretion in denying Champagne's request for a continuance.

The entry is:

Judgment affirmed.

---

Hutchins"; that it "did not follow appropriate standards of medical, hospital or nursing care in allowing Makita Champagne to be taken to [the wrong mother]"; and that it had "intentionally, negligently and recklessly inflicted severe emotional distress upon [Champagne]." Similarly, the notice of claim filed against Hutchins alleged, *inter alia*, that Hutchins was "negligent in that she did not follow proper and sufficient proce-

dures in her education and training and did not follow appropriate standards of medical, hospital or nursing care in allowing Makita Champagne to be taken to [the wrong mother] and in informing [Champagne] about the risks and consequences of the incident"; and that she had "intentionally, negligently, and recklessly inflicted severe emotional distress upon [Champagne]."