STATE OF MAINE
ANDROSCOGGIN, SS.

DEC 21 2001
ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
Docket No. 00-CV-080
EAG - AND - 12/21/2001

IRENE FULLAM,

     Plaintiff

    v.

BERMAN & SIMMONS, P.A.,
     Defendant

ORDER ON MOTION FOR
SUMMARY JUDGMENT

Irene Fullam retained John Sedgewick and the firm of Berman & Simmons to represent her interests in a Workers' Compensation claim. She filed this legal malpractice suit because she believes that Mr. Sedgewick breached the contract between them and represented her negligently. Pending before the Court is the Defendant's Motion for Summary Judgment, filed June 25, 2001. The motion was argued at a hearing held on December 3, 2001. Plaintiff's position was presented by Thomas Watson Esq., and defendant's position by Martha Gaythwaite, Esq. There are very few disagreements between the parties concerning the facts in this case. Rather, the disagreements stem from the interpretation of various facts. For purposes of summary judgment, the undisputed facts have been summarized below.

## FINDINGS AND CONCLUSIONS

On December 25, 1995, Irene Fullam felt a pull in her neck and right shoulder after lifting a patient at Russell Park Manor in Lewiston, Maine. She left her employment at Russell Park one day later, and never returned. Over the next few months Ms. Fullam was seen by a number of physicians, including Dr. Joel Franck,

Dr. Kerry White, Dr. Stephen Klein, and Dr. Kenneth Blazier. All of the non-surgical treatments they recommended were unsuccessful in alleviating Ms. Fullam's complaints. Eventually Dr. Blazier referred Ms. Fullam to Dr. Donald Pierce for a surgical consultation. After examining her, Dr. Pierce sent Ms. Fullam for a second consultation with Dr. Griffith Harsh. Based upon their recommendations, Ms. Fullam elected to undergo surgery on her neck.

Dr. Pierce surgically fused Ms. Fullam's fourth, fifth, sixth, and seventh cervical vertebrae on October 24, 1996. This procedure was Ms. Fullam's third neurosurgical intervention. In 1989 the disc between her fifth and sixth cervical vertebrae was removed. In 1991, the discs between her fourth and fifth cervical vertebrae and between her sixth and seventh cervical vertebrae were removed.

Ms. Fullam retained John Sedgewick in April 1996, while she was still being treated conservatively. In the petitions he filed on her behalf with the Maine Workers' Compensation Board on June 7, 1996, Mr. Sedgewick asserted that Ms. Fullam had incurred two injuries while employed at Russell Park; an injury to her neck "and related body parts" on December 25, 1995; and a stress-related injury the next day.

On November 21, 1996, Ms. Fullam and her attorney appeared before Hearing Officer Glen Goodnough to present testimony in support of her claims. Attorney John King, present at that hearing on behalf of Russell Manor, cross-examined Ms. Fullam. After two additional conferences, the evidence was "closed" on February 26, 1997. A month later, after considering the evidence presented and the position

2

papers filed by counsel, Mr. Goodnough denied Ms. Fullam's claim for a mental injury, and only partially granted her physical claim. The hearing officer found that Ms. Fullam sustained only a cervical strain on December 25, 1995. He further found that the strain, when combined with her preexisting cervical disease, caused her to be out of work from January 5, 1995 until September 10, 1996.

In his decision, Mr. Goodnough made the following findings:

> It is not at all clear from the surgical note, or from Dr. Pierce's July 23, 1996 pre-op report, that the surgery was related to the December 25, 1996 [*sic*] strain injury. It was Dr. Pierce's view, at least as of July 23, 1996, that the employee's ongoing pain was being caused by a "disc fragment superimposed upon a bony bar at the posterior aspect of the vertebral body at C5."

> The Board finds, based upon the medical history summarized above, that the employee has failed to prove on a more likely than not basis that her surgery, and resultant incapacity, was (and/or remains) causally-related to the December 25, 1995 cervical strain. *Given the complexity of the employee's medical condition, the Board declines to infer continuing causation absent a supporting medical analysis.*

*Goodnough*, April 30, 1997, ¶ 13 and 14. (emphasis added)

After reviewing that decision, Attorney Sedgewick and Ms. Fullam both realized that Mr. Goodnough had made his decision about her case without reference to a December 23, 1996 letter from Dr. Pierce. In pertinent part, the letter stated:

> It is my opinion, with a reasonable degree of medical certainty, from the history given to me, that the patient's painful condition in her cervical spine for which I treated her surgically. was due to the lifting and pulling injury sustained at work as an R.N. when she lifted a patient on December 25, 1995.

Mr. Sedgewick soon acknowledged that he had failed to submit that letter into

evidence.

Although Dr. Pierce and Ms. Fullam both considered his surgery to be successful, Ms. Fullam continued to have complaints of pain and weakness. Eventually those complaints were linked to a torn meniscus in her right acromioclavicular ("AC") joint. In April 1997, Dr. Pierce performed an AC joint resection arthroplasty on Ms. Fullam to correct that problem.

In March 1999, Ms. Fullam filed a Petition for Restoration with the Board, alleging that, since September 11, 1996, she had been totally incapacitated as a result of the "neck and right shoulder" injury she sustained on December 25, 1995. Ms. Fullam testified at the August 10, 1999 hearing before Mr. Goodnough. Based upon her testimony, and on the other evidence presented, Mr. Goodnough issued a second decision. Included in that decision were two findings contrary to Ms. Fullam's position: 1) the injury she sustained on December 25, 1995 had been a "cervical strain that included elements of myofascial pain in the neck and into the right shoulder"; and,

2) the surgery she underwent in October 1996 had been "related to the prior condition as opposed to a work injury at Russell Park Manor."

Based upon the principle of *res judicata*, Mr. Goodnough declined to reconsider whether the work injury of December 25, 1995 significantly aggravated Ms. Fullam's underlying cervical condition. He further found, based largely upon the opinion of Dr. Phillips, that Ms. Fullam's shoulder complaints were unrelated to

that work-related injury. Mr. Goodnough explained his reasoning as follows:

> Although Dr. Phillips may not have the same surgical credentials as Dr. Pierce, his analysis in this case makes intuitive sense. Dr. Phillips notes that the employee was operated on for the right shoulder AC joint resection arthroplasty with marked degenerative changes noted in the operative report. Dr. Phillips also notes that he examined the employee in March 1996, just a few months after the injury and that he would have expected her to have shown at that time swelling, extreme tenderness and an inability to move her arm away from her body. Dr. Phillips [*sic*] overall point is well-taken: the employee's shoulder was clinically examined in detail by several experienced practitioners shortly after the injury. Given the amount of medical attention the right shoulder received early-on (that is, within 3 or 4 months after the injury), it seems unlikely that at least some overt clinical signs (swelling, tenderness, decreased range of motion) of the condition for which she was operated on almost a year and one-half later were not observed or identified by the physicians who were examining and treating her. While it is possible that the AC joint problems (*i.e.*, severe arthritis and joint separation) were caused by the December 25, 1995 injury but "masked" for well over a year due to more pronounced problems with the cervical spine, it is more probable that the condition simply developed over time as a result of nonwork-related factors, becoming acute in early 1997 and requiring surgery by April 1997.

*Goodnough decision*, September 3, 1999, ¶ 5.

## DISCUSSION

In its motion for summary judgment, defendant asserted that it was entitled to judgment as a matter of law because Ms. Fullam could not establish that she had been damaged because of the alleged malpractice. Alternatively, it argued that her claim must be limited to the period between September 1996 and July 1998. These arguments are based upon the defendant's interpretation of Ms. Fullam's complicated medical condition and the law of workers' compensation.

Motions for summary judgment have been addressed by the Law Court on

5

many occasions:

> In reviewing a summary judgment, we examine the evidence in the light most favorable to the nonprevailing party to determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law. *(citation omitted)* In testing the propriety of a summary judgment, we accept as true the uncontroverted facts properly appearing in the record. *(citation omitted)*

*Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 5, 711 A.2d 842, 844. The issue is not whether there are <u>any</u> disputes of fact, but whether any of the disputes involve a "genuine" issue of "material" fact. *See* Rule 56(c).

Mr. Goodnough's decision in April 1999 specified the lack of medical evidence supporting Ms. Fullam's claim as the basis for his denial of ongoing benefits. If he had had an opportunity to review Dr. Pierce's report, it is possible that he would have found that the surgery of October 1996 was caused, wholly or in part, by the injury of December 25, 1995. Whether he would have reached a different decision is entirely a question of fact. However, for the purpose of this motion, the court will assume that Mr. Goodnough would have ruled for Ms. Fullam in April 1997 if he had reviewed Dr. Pierce's letter.[1]

The question then is whether such a decision would have resulted in benefits beyond that which she has already received. Based upon Mr. Goodnough's decision, Ms. Fullam did receive compensation for a period of incapacity from January 5, 1996

---

[1] In its reply to plaintiff's opposition, defendants raised, for the first time, an allegation that Ms. Fullam could not meet her burden of establishing that she would have received more benefits if Dr. Pierce's report had been admitted. Although an interesting part of the case, this was not the focus of the defendant's motion, and will not be addressed by the court.

until September 10, 1996. She was not, however, awarded the costs associated with her first surgery by Dr. Pierce.

After the second round of hearings initiated by Ms. Fullam, Mr. Goodnough found that her shoulder problems were unrelated to the injury of December 1995. This decision was made despite the admission of Dr. Pierce's "missing" letter, as well as other supporting evidence.

During the August 10, 1999 hearing, Ms. Fullam testified that, as a result of her shoulder problems, she was unable to pull, push, lift or repetitively move her right arm. (Tr. p. 19). The shoulder problems had become apparent to her as early as February 1997 (Tr. p. 17) and, given her job requirements, those restrictions have prevented her from working at least since then. Based upon Ms. Fullam's testimony, the defendant has argued that her shoulder problems were an "intervening independent cause of incapacity" that would have ended the employer's liability for workers' compensation benefits even before September 10, 1996. It has asserted, therefore, that even if Mr. Sedgewick had been negligent, his negligence did not result in a loss of any benefits.

The statements of material facts and supporting documents, including Ms. Fullam's testimony, and the testimony of her surgeon, all support the defendant's premise. Ms. Fullam's shoulder problems are permanent and totally disabling. The only fact remaining in dispute is the date the shoulder problems became totally disabling.

Ms. Fullam may also suffer from rheumatoid arthritis. On the date her

rheumatologist was deposed, she was disabled by symptoms that resembled that disease process. However, whether she has the disease is still a question and, unlike the shoulder problem, its effect on her ability to work may not be permanent. In any event, because the shoulder problems have caused Ms. Fullam to be permanently incapacitated from work, the question of "additional" disability from arthritis is moot.

Defendant is entitled to partial summary judgment. There is no dispute but that Ms. Fullam is now permanently disabled as a result of her shoulder injury. Therefore, defendant's possible liability for any negligence found shall be limited to reimbursement for the costs associated with the neck surgery, and for wage replacement benefits between September 10, 1996, and the date she became totally incapacitated as a result of her shoulder problems. Those factual determinations are reserved for trial.

## ORDER

For the reasons stated above, defendant's motion for summary judgment is granted, in part.

## DOCKET ENTRY

The Clerk is directed to incorporate this Order in the docket by reference, in accordance with M.R.Civ.P. 79(a).

DATED: December 21, 2001

Ellen A. Gorman
Superior Court Justice

8