STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-00-096
[ AC- AND- ℓ/12/2002

CITY OF LEWISTON,
          Plaintiff

v.

ORDER

PILSBURY ASSOCIATES,
and
NORMAND ROUSSEAU,
          Defendants

DONALD L. GARBRECHT
LAW LIBRARY

AUG 20 2002

RECEIVED & FILED

AUG 12 2002

ANDROSCOGGIN
SUPERIOR COURT

## FINDINGS OF FACTS

On May 22, 2000, the City of Lewiston filed a Complaint for Declaratory Judgment and Equitable Relief against Pilsbury Associates and Normand Rousseau In its complaint, Lewiston requested that the court determine the respective rights of the parties to a portion of a building known as the Pilsbury Block, located at the corner of Pine and Lisbon Streets in Lewiston. On September 7, 1995, the building's owners, Pilsbury Associates, conveyed a portion of the building to the City to be used in the library expansion. The deed transferring that property also conveyed to the City a right of first refusal for the portion of the building that had been retained by Pilsbury, and a separate option to purchase that remaining portion.

Through a letter dated December 7, 1999, Pilsbury Associates notified the City that it had received an offer to purchase the remaining portion for $225,000. Normand Rousseau was one of a group of individuals who made that purchase offer. In a letter dated January 20, 2000, then City Administrator Robert Mulready notified Pilsbury that, because the City believed that the property was worth only $120,000, it did not wish to

exercise its right of first refusal at that time. In that same letter, Mulready included the following paragraph:

> As you know, pursuant to terms of the warranty deed recorded in the Registry, the City does have the option to purchase the property based on Fair Market Appraisal at any time within a 99 year period following the date of purchase of the adjacent building in September of 1995. This option to purchase continues in full force in [sic] effect with subsequent buyers of the property. Mr. Rousseau should be made aware of this fact prior to purchase of the building although, the Title Search would reveal those conditions.

Within one week, Pilsbury Associates and the Rousseau group entered into a "long term fixed rent lease" providing for an initial term of thirty years and two additional renewal options, each for an additional term of thirty years.

On March 2, 2000, Mulready sent a letter to Thomas Theberge, a principal of Pilsbury, and copied the letter to Rousseau. In that letter, which purported to be a recitation of conversations between himself and Theberge, Mulready stated that the letter should be treated as "the City's formal notification that it intends to exercise its option." Mulready also explained that the City's appraisal had been completed, and that he understood that Theberge intended to obtain his own appraisal. Mulready requested a copy of the lease mentioned above, noting that because "the existence of the lease may have an effect on the fair market value of the property," the City wished to have its appraiser review the lease. Finally, Mulready told Theberge - and Rousseau - that the City intended to acquire the building promptly, and that it would not consider any later-made improvements in determining the building's fair market value.

With its Answer, Pilsbury filed a counterclaim for money damages, asserting that the City had barred its access to the elevator and stairs, thereby decreasing the value of the retained portion of the property. Rousseau also filed a Counterclaim, asserting that

2

the City had violated his constitutional rights of liberty and due process.

The City's first motion for partial summary judgment was filed in November 2000. In an Order dated January 31, 2001, the Superior Court (Studstrup, J.) found that the lease to Rousseau was not a grant of a fee interest, and denied the City's motion. It also stated that it was not convinced that the City could take the property without consideration for the existing lease. On May 15, 2001, after extensive negotiations, the City entered into agreements with both Pilsbury and Rousseau. Both of the signed agreements contain the following language:

> 4. There is litigation pending between City, Pilsbury and Rousseau related to all of the aforementioned in Androscoggin Superior Court, Docket No. CV-0096, including the assertion of claims by City by way of declaratory judgment and counterclaims brought against City by Rousseau and Pilsbury;
> 5. The parties hereto desire to resolve all disputes related to the Property and the aforementioned litigation. . . .

The Agreements gave the City an option to purchase the separate interests of Pilsbury and Rousseau in the property, and created a mechanism to establish prices. If not exercised within four months after the date of the agreement, the option was to "expire on its own terms." Pilsbury Associates and Rousseau signed the agreements on May 14, 2001. The City Administrator signed on June 4, 2001. Over the next few months, there were continuing disputes about the method of appraisal to be used in determining the value of Rousseau's interest.

The City never exercised its options to purchase either the fee or the leasehold; they lapsed on October 5, 2001. On December 11, 2001, the City took Pilsbury's fee interest and Rousseau's leasehold interest by eminent domain. Pilsbury received

3

$50,000 for its interest, and Rousseau received $95,000 for his.[1]

In compliance with the Settlement Agreements, the City has dismissed its claims against both defendants. It also paid Rousseau for his leasehold interest, as mentioned above. However, Rousseau has refused to dismiss his Counterclaim based upon his assertion that the City defaulted on its obligation to perform an appraisal of his leasehold, that this inaction was a material breach of the Agreement and that, therefore, he is not required to comply with the Agreement. Because Pilsbury has dismissed its Counterclaim against the City, the only pending claim in this action is Rousseau's counterclaim.

## CONCLUSIONS OF LAW AND DISCUSSION

On July 18, 2002, the City filed a motion for summary judgment, requesting that the court order Rousseau to execute and file the dismissal of his counterclaim or, in the alternative, that the court dismiss that claim, with prejudice. The motion was argued on Thursday, August 8, 2002. After review of the memoranda,[2] affidavits, and statements of material facts filed by the parties, after review of the applicable law, and for the reasons stated below, the court is convinced that the City is entitled to the relief requested.

Motions for summary judgment have been addressed by the Law Court on many occasions:

> In reviewing a summary judgment, we examine the evidence in the light most favorable to the nonprevailing party to determine whether the record supports the conclusion that there is no genuine issue of material

---

[1]Both Pilsbury and Rousseau have filed suit to challenge the sums received.

[2]As an aside, the court directs counsel for Rousseau to review M.R.Civ.P. 5(i)(1). As we all age, the requirement for double-spacing becomes more and more important.

4

fact and that the prevailing party is entitled to a judgment as a matter of law. *(citation omitted)* In testing the propriety of a summary judgment, we accept as true the uncontroverted facts properly appearing in the record. (citation omitted)

*Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 5, 711 A.2d 842, 844. The issue is not whether there are <u>any</u> disputes of fact, but whether any of the disputes involve a "genuine" issue of "material" fact. *See* Rule 56(c). After reviewing the record provided, with these standards in mind, the court must conclude that there are no material facts in dispute.

In his response to this motion, Rousseau has focussed on his disagreement with the methods used by the City's appraiser to determine the value of his leasehold. The Agreement clearly allow for each appraiser to "apprise the fair market value of the leasehold subject to this Option to Purchase, utilizing such information and resources as they shall deem advisable." The parties' Agreements did not <u>require</u> the City to exercise its options. The Agreement with Rousseau includes the following language:

> This Option *may* be exercised by City giving to Rousseau written notice of its intention to exercise the Option . . . Rousseau acknowledges that the City Council of the City of Lewiston must approve the exercise of this option. The exercise of the option is not legally enforceable against City until ratified by the City Council of the City of Lewiston. (emphasis added)

Even if the court were to find that the City had failed to comply with some side agreement about the appraisal methods to be used, that failure is not a material breach of the Agreement..

As mentioned above, both Rousseau and Pilsbury have challenged the sums received as a result of the seizures of their property. At the hearing on those claims, the court will review the various appraisals, and will consider counsel's arguments concerning the appropriate method to be used in parsing the value of the fee and the

5

value of the leasehold.

## ORDER

The City's motion for Summary Judgment is granted. Rousseau's Counterclaim against the City is dismissed, with prejudice.

The clerk is instructed to incorporate this order by reference in the docket for this case.

DATED: *12 August 2002*

_____
Ellen A. Gorman
Justice, Maine Superior Court

Date Filed __May 22, 2000__ ___ANDROSCOGGIN___ Docket No. ____CV-00-96____

County

Action ___DECLARATORY JUDGMENT___

CITY OF LEWISTON

PILSBURY ASSOCIATES, Lewiston, Maine
and NORMAND ROUSSEAU, Lewiston, Maine

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| William K. McKinley, Esq. BAR #2494 (1-10-01) | Richard L. Trafton, Esq. (6-9-00) (Pilsbury |
| Robert S. Hark, Esq.        BAR #496 | TRAFTON & MATZEN |
| TROUBH, HEISLER & PIAMPIANO, P.A. | Ten Minot Avenue, P.O. Box 470 |
| 511 Congress St., P.O. Box 9711 | Auburn, ME. 04212-0470 |
| Portland, ME 04104-5011 | BAR #204 |
| | John D. Clifford, IV, Esq. BAR #146 (6-21-00 |
| | CLIFFORD & GOLDEN |
| | 5 Maple St., P.O. Box 368     (Rousseau) |
| | Lisbon Falls, ME. 04252 |
| | Thomas P. Peters, II, Esq. BAR #2820 |
| | PETERS & ASSOCIATES      (6-21-00) |
| | 937 Main St.            (Rousseau) |
| | Lewiston, ME. 04240-5154 |

| Date of Entry | |
|---|---|
| 2000 May 23: | Received 5-22-00. Filing fee paid. ($120.00) Rec. #5-22-00  #10 Summary Sheet, filed. Complaint with attached Exhibits A, B, C, D, E & F, filed. |
| "   " | On 5-23-00 Case File Notice mailed. |
| May 30: | Received 5-26-00. Notice and Acknowledgment of Service filed showing acceptance on 5-22-00 by Richard L. Trafton, Esq. on behalf of Defendant Pilsbury Associates. |
| June 8: | Received 6-6-00. Notice and Acknowledgment of Service filed showing acceptance on 6-2-00 by Thomas Peters, Esq. on behalf of Defendant Normand Rousseau. |
| June 12: | Received  6-9-00. Answer, Defenses and Counterclaim of Defendant Pilsbury Associates with attached Exhibit A, B & C, filed. Richard L. Trafton, Esq. appears on behalf of Defendant Pilsbury Associates. |
| "   " | Received 6-12-00. Counterclaim Summary Sheet, filed. |
| "   " | Plaintiff's Notifications (2) of Discovery Service, filed. Plaintiff's First Request for Production of Documents Propounded to Defendant Pilsbury Associates served on Richard L. Trafton, Esq. on June 9, 2000. |
| "   " | Plaintiff's First Request for Production of Documents Propounded to Defendant Normand Rousseau served on Thomas P. Peters, II, Esq. on June 9, 2000. |
| June 20: | Received 6-20-00. Plaintiff's Reply to Counterclaim of Pilsbury Associates, filed. |
| June 22: | Received 6-21-00. Defendant Normand Rousseau's Answer and Counterclaim, filed. (Exhibits A, B &C) John D. Clifford, IV, Esq. and Thomas P. Peters, II, Esq. appear on behalf of Defendant Rousseau. |