STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-303
GAP - ∨ ∨ ∨ - 5/9/2003

JULIANE HILLOCK,

Plaintiff

v.

**ORDER**

ERIC W. WYMAN,
DIANE L. WYMAN, and
SIGNATURE REALTY, LLC,

Defendants

DONALD L. GARBRECHT
LAW LIBRARY

MAY 14 2003

Before this court are Defendant Signature Realty, LLC's and Eric W. Wyman and Diane L. Wyman's motions for summary judgment pursuant to M.R.Civ.P. 56(c).[1] Because the underlying fact pattern is common to all parties this court will consider as a whole the parties' statements of material facts.

## FACTS

Eric and Diane Wyman (the Wymans) owned a house in Waterboro, Maine (house), which they decided to sell. As a result, on May 21, 1998, the Wymans granted Signature Realty, LLC (Signature Realty) the exclusive right to

---

[1] On January 6, 2003, this court granted summary judgment pursuant to M.R.Civ.P. 56 in favor of Defendants Eric W. Wyman and Diane L. Wyman with regard to all counts set forth in Plaintiff Juliane Hillock's complaint. In light of the agreement between the respective parties extending the time for the Plaintiff to file her opposition, this court shall grant the Plaintiff's Motion to Vacate Order on Defendants Eric Wyman and Diane Wyman's Motion for Summary Judgment and proceed to the merits of the motion.

sell their house. Cheryl Filliger (Filliger) acted as the listing broker on behalf of Signature Realty.

Filliger and the Wymans completed and then signed a seller disclosure form, which stated, amongst other things, that there was no moisture or leakage in the basement of the house. Filliger knew that the basement walls were built up off the floor on cinderblocks; Diane Wyman explained to Filliger that the walls were constructed this way in case there was ever a flood in the basement. However, the parties' statements of material facts are in dispute as to whether the Wymans stressed to Filliger the importance of keeping the sump pumps plugged in.

Juliane Hillock (Hillock) and her husband toured the house. During the tour, Hillock's husband noticed a black hose running from the basement to the outside of the house, which he believed was probably connected to a sump pump. On a second visit to the house, Hillock's husband confirmed that a sump pump was in the basement. Hillock's husband, who worked as an electrician or a plumber's assistant, understood the purpose of a sump pump because he had installed dozens of sump pumps. While touring the house, Hillock and her husband observed that the carpeted and furnished basement was dry and that there were no signs of water damage or leaks.

Instead of having an independent professional inspect the house, Hillock relied on her husband to perform the task. In the fall of 1998, Hillock proceeded to purchase the house. Hillock and her husband then began to build two bedrooms in the basement of the house. On March 2, 1999, the sump pump failed due to a power outage and the basement flooded, damaging some property. After this flood, Hillock and her husband knew that the sump pump

2

would be less likely to fail if they installed a generator or back-up battery but elected not to do so because they hoped it would not happen again. The basement flooded two more times, events that upset Hillock. Although the stress associated with the flooding caused Hillock to cry one day at work, she did not seek counseling or experience physical symptoms.

On November 30, 2001, Hillock filed suit against the Wymans and against Signature Realty for the actions of its agent, Filliger.

## DISCUSSION

At the summary judgment window, this court needs to consider the following:

> A summary judgment is warranted when the statement of material facts and the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, cited in the statement of material facts establish that there is no genuine issue of material fact and that a party is entitled to a judgment as a matter of law.

Darling's v. Ford Motor Co., 2003 ME 21, ¶4, 817 A.2d 877, 879 (citing M.R.Civ.P. 56(c), (h)). Moreover, the Rules of Civil Procedure state that "[s]upporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein." M.R.Civ.P. 56(e) (emphasis added).

**Intentional Misrepresentation (Counts I & VI)**

The elements of the Plaintiff's intentional misrepresentation claim as detailed in the complaint are the same as those in a fraud claim. See Barnes v.

Zappia, 658 A.2d 1086,1089 (Me. 1995). Therefore, "[t]o withstand the motion for a summary judgment on the fraud claims, plaintiff[] must demonstrate specific facts that create a dispute as to whether defendants made a misrepresentation of material fact, with knowledge of its falsity or in reckless disregard of whether it was true or false and as to whether they reasonably relied on the misrepresentations to their detriment." Id.

The statements of material facts fail to show that Filliger knew that there was moisture or leakage in the basement of the house. Similarly, Hillock has not presented admissible evidence showing that the Wymans experienced on-going water problems in the basement prior to selling the house.

Even though the parties dispute whether the Wymans stressed to Filliger that the sump pumps were to be plugged in and working, again there was no admissible evidence that Filliger or the Wymans knowingly or recklessly made false representations about previous water problems in the basement of the house. In fact, prior to buying the house, Hillock and her husband had observed that the basement was dry and did not show signs of water damage or leaks. Moreover, Hillock's husband knew that there was a sump pump in the basement and had a good understanding of the purpose behind a sump pump. Armed with such knowledge, Hillock and her husband were not in a position where they had to detrimentally rely upon the information provided by Filliger and the Wymans. Hence, Hillock has failed to establish the requisite elements of her claim.

4

**Negligent Misrepresentation (Counts II & VII)**

Regarding a negligent misrepresentation claim, the Law Court has adopted section 552(1) of the Restatement (Second) of Torts, which essentially states that when a person with a pecuniary interest in a transaction fails to exercise reasonable care and supplies false information to another party involved in the transaction that justifiably relies upon the false information, the person is liable for the loss suffered by the other party. Perry v. H.O. Perry & Son Co., 1998 ME 131, ¶5, 711 A.2d 1303, 1305 (noting that the Law Court adopted this section of the Restatement (Second) of Torts in Chapman v.Rideout, 568 A.2d 829 (Me. 1990)).

In the present case, the issue is whether Hillock justifiably relied upon any misinformation conveyed by Filliger or the Wymans. As mentioned above, Hillock's husband was well acquainted with the workings of a sump pump and therefore even if Filliger or the Wymans failed to communicate the importance of keeping the sump pump running, Hillock could not have justifiably upon such a misrepresentation or omission. After all, Hillock, in her statement of material facts, states that she relied upon her husband, who had experience conducting building inspections, to inspect the house, which would include the basement and its sump pump. Hence, Hillock has not provided sufficient evidence satisfying all of the elements of her claim.

**Breach of Contract – Condition of Real Estate (Count III)**

Hillock contends in her complaint that the Purchase and Sale Agreement expressly and impliedly provided that the basement of the house had no moisture or water leakage problems. According to Hillock, the Wymans knew

5

when they executed the Purchase and Sale Agreement that the basement had such problems. Notably, the claim set forth in the complaint does not speak to whether the Wymans suspected or believed that such problems would arise in the future. Hence, the burden is on Hillock to show in the statements of material facts that the Wymans had known about actual, and not potential, moisture and water leakage problems in the basement of the house before the parties executed the Purchase and Sale Agreement. Hillock, however, has failed to meet her burden of producing admissible evidence. Therefore, Hillock's claim must fail.

**Breach of Contract –Refusal to Mediate (Count IV)**

Hillock argues that the Wymans breached a contract by refusing to mediate the dispute as required by the terms of the Purchase and Sale Agreement.[2] As a result, Hillock seeks to recover the fees she spent in bringing this suit. However, the court has to consider that Hillock has not provided admissible evidence as to her other claims showing that the Wymans' actions were responsible for the damages she suffered. By failing to make out a case on these underlying claims, Hillock has essentially failed to make out a case that there had been contractual issues in need of mediation. As a matter of fairness and practicality, the court cannot retrospectively enforce a mediation clause after determining, with the benefit of hindsight, that mediation would have been futile.

---

[2] Paragraph 10 of the Purchase and Sale Agreement provides:

> MEDIATION: Any dispute or claim arising out of or relating to this contract or the property addressed in this contract shall be submitted to mediation in accordance with the Maine Residential Real Estate Mediation Rules of the American Arbitration Association. This clause shall survive the closing of the transaction.

## Intentional Infliction of Emotional Distress (Counts V & VIII)

The Law Court has held that for an intentional infliction of emotional distress claim to survive a defendant's summary judgment motion, a plaintiff has to establish the following four elements:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct;

(2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;

(3) the actions of the defendant caused the plaintiff's emotional distress; and

(4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Curtis v. Porter, 2001 ME 158, ¶10, 784 A.2d 18, 22-23 (quoting Champagne v. Mid-Maine Med. Ctr., 1998 ME 87, ¶15, 711 A.2d 842, 847) (internal bracket and quotations omitted). Hillock's statement of material facts do not show that Filliger's or the Wymans' conduct, even viewed in a light most favorable to Hillock, meets the standard set forth in Curtis, or, that Hillock suffered the kind of distress that a reasonable person could not be expected to endure. Id. Hence, Hillock has failed to present facts that support each of the above four elements.

## Maine Unfair Trade Practices Act (Count IX)

Finally, Hillock avers that Signature Realty has engaged in unfair or deceptive acts violating the Unfair Trade Practices Act. 5 M.R.S.A. § 207 (2002). Hillock has brought a private claim under the Act, seeking to recover, amongst other things, attorney's fees. 5 M.R.S.A. § 213 (1), (3) (2002). This derivative claim is based entirely on the original claims against Signature Realty as detailed

7

in the three previous counts of the complaint. Consequentially, a derivative claim cannot survive the rendering of a summary judgment on the three original claims.

WHERFORE this court shall **GRANT** Defendant Signature Realty LLC's and Eric W. Wyman and Diane L. Wyman's motions for summary judgment pursuant to M.R.Civ.P. 56(c).

Dated: May 9, 2003

G. Arthur Brennan
Justice, Superior Court

Thomas P. Elias, Esq. - PL
Carol I. Eisenberg, Esq. - Def. Signature Realty, LLC
Thomas S. Marjerison, Esq. - Defs. Eric W. Wyman & Diane L. Wyman

8